**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | |
|---|---|
| Joseph Carrillo,<br><br>                    Plaintiff,<br><br>v.<br><br>Union Pacific Railroad Co.,<br><br>                    Defendant. | Case No. 3:21-cv-00026<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiff Joseph Carrillo ("Carrillo") files this Complaint against Defendant Union Pacific Railroad Co. ("Union Pacific" or "Defendant") for damages resulting from its violation of the Americans with Disabilities Act, 42 U.S.C § 12101 *et seq.*, as amended ("ADA").

**PRELIMINARY STATEMENT**

1. Beginning in 2014, Union Pacific implemented company-wide changes to its fitness-for-duty program ("Fitness-for-Duty"). As a result of these changes, Union Pacific imposed a blanket requirement that employees in certain positions disclose specified health conditions—even where the condition had no impact on the employee's ability to safely perform his or her job. This requirement was needlessly invasive and violated the ADA by itself, but Union Pacific made matters worse by imposing a policy that automatically removed the employees disclosing these conditions from service. Union Pacific then subjected the employees to a Fitness-for-Duty evaluation, again regardless of whether the employee had been safely performing the essential functions of his or her job. These evaluations do not assess whether an employee is fit for duty and Union Pacific does not conduct physical evaluations. Furthermore, it routinely disregards the opinions of outside doctors who provide physical evaluations of the employees. Instead, Union

Pacific demands medical information from the employee and conducts a "file review," falsely determining that the employee is unfit for duty, or by issuing unnecessary work restrictions which it then refuses to accommodate.

2. In February 2016, several Union Pacific employees commenced a class action disability discrimination lawsuit against Union Pacific, alleging that Union Pacific's Fitness-for-Duty policies and practices constituted a pattern or practice of discrimination under the ADA. *See Quinton Harris et al. v. Union Pacific Railroad Company*, Case No. 8:16-cv-381 (D. Neb.). The district court of Nebraska certified the class in February 2019; however, the Eighth Circuit Court of Appeals reversed the certification decision in March 2020.

3. Carrillo is a victim of the same discriminatory Fitness-for-Duty policies and practices alleged in *Harris*. Despite being qualified and safely performing his job, Carrillo was removed from service for a Fitness-for-Duty evaluation under the new program and excluded from work at Union Pacific on the basis of his disability. Carrillo was a putative class member in *Harris*, and now timely brings this individual legal action.

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331 because Union Pacific violated the ADA.

5. Venue is proper under 28 U.S.C. § 1391(b)(1), because a substantial part of the events or omissions giving rise to the claim occurred in Houston, Texas.

6. Venue is proper under 42 U.S.C. § 2000e(f)(3) because the alleged unlawful employment practices were committed by Union Pacific in El Paso, Texas, and because Carrillo would have continued to work in El Paso, Texas if not for the alleged unlawful employment practices.

## THE PARTIES

7. Carrillo resides in Veguita, New Mexico. He was an employee of Union Pacific, working in El Paso, Texas.

8. Union Pacific is a railroad carrier engaged in interstate commerce and has operations in Houston, Texas.

## FACTUAL ALLEGATIONS

### *UNION PACIFIC'S FITNESS-FOR-DUTY POLICIES AND PRACTICES*

9. Union Pacific's Medical Rules, as reviewed and revised on February 1, 2014 (attached as Exhibit A), apply to all Union Pacific employees across the country. They outline the Fitness-for-Duty program at Union Pacific.

10. The medical rules require, among other things, that all employees in Telecom positions, Supply Department field positions, Operating Department field positions (including Transportation, Engineering Services and Mechanical positions), and Dispatcher positions disclose "any new diagnosis, recent events, and/or change in the following conditions"—which Union Pacific labels as "Reportable Health Events." (Exhibit A.)

11. Union Pacific's Fitness-for-Duty program is even broader in practice than the Medical Rules reflect. Union Pacific routinely triggers the Fitness-for-Duty process for employees who have never indicated they are unable to perform the essential functions of their jobs, simply because Union Pacific learns that the employee has, or has had in the past, certain other, non-listed health conditions, or because a manager refers an employee to Health and Medical Services for a Fitness-for-Duty evaluation.

12. When a Fitness-for-Duty evaluation is triggered, the employee must:

**Stay off work** (not to report to work or mark up for work) until Health and Medical Services has completed a Fitness-for-Duty evaluation for that particular Health

3

event and has provided the employee's Supervisor with notification that the employee is fit for duty and able to return to his/her job.

**Notify his/her Supervisor** that he/she has had a Reportable Health Event that requires Health and Medical Services to complete a Fitness-for-Duty determination prior to the employee being able to work.

**Notify Health and Medical Services** that he/she has had a Reportable Health Event that requires Health and Medical Services to complete a Fitness-for-Duty evaluation.

(Exhibit A.)

13. These Fitness-for-Duty evaluations are not individualized assessments of the employee's ability to safely perform the essential functions of the employee's job.

14. Union Pacific routinely disregards the opinions of the employee's treating doctor who has physically examined the employee.

15. Once Union Pacific receives the medical information, Union Pacific's Health and Medical Services Department, located in Omaha, Nebraska and at the time headed by Chief Medical Officer Doctor John Holland, conducts a "file review" and issues a Fitness-for-Duty determination that the employee is either fit for duty, fit for duty with restrictions, or unfit for duty.

16. Union Pacific's Health and Medical Services Department routinely issues Fitness-for-Duty determinations that disqualify employees from their positions on the basis of their disabilities, even though the disabilities do not affect the employee's ability to safely perform the essential functions of their jobs.

17. When issuing these Fitness-for-Duty determinations, the Health and Medical Services department relies on standardized protocols for employees with certain health conditions or treatments in order to assign standardized work restrictions on employees.

18. As a result of the conduct described above, Union Pacific employees who have never had a problem performing the essential functions of their jobs have been forced to disclose

sensitive medical information, stay off work without pay, and many have lost their livelihoods.

## *PLAINTIFF JOSEPH CARRILLO*

19. Carrillo was hired by Union Pacific on or around January 28, 2013.

20. Most recently, Carrillo worked for Union Pacific as a Diesel Electrician in El Paso, Texas.  Carrillo safely worked in his position.

21. In about June 30, 2017, Carrillo experienced a brief period of unresponsiveness while at home, after which he called in sick to work. His wife called Union Pacific to alert them of his being absent. During the call Carrillo's wife briefly explained what happened to Carrillo.

22. The next morning, Carrillo returned to work. Carrillo worked for several hours, at which time his manager, Brett Thomason, pulled him aside and informed him that he was being removed from his job without pay pending a Fitness-for-Duty review.

23. Around July 17, 2017, Carrillo received a letter from Union Pacific Fitness-for-Duty nurse Bridgette Ziemer requesting that he provide to Union Pacific voluminous medical records.  Carrillo provided the documents. Carrillo further complied with additional requests for more medical records and information over a period of several months.

24. During this time, Union Pacific extended Carrillo's medical leave and continued to refuse to return Carrillo to work.

25. Around January 17, 2018, Carrillo received a letter from Union Pacific signed by Fitness-for-Duty Nurse, Bridgette Ziemer, continuing Carrillo's medical leave of absence and requesting additional medical documents. Carrillo again promptly provided Union Pacific the medical documents.

26. Around June 20, 2018, Carrillo received a letter by US Certified Mail signed by Andreas Mader. There, it stated the "Health and Medical Services has advised the Mechanical

5

Department, based on medical documentation available to Union Pacific Railroad, that" Carrillo was "released to return to work" with "permanent work restrictions." Those restrictions were: Operation of Comp. Vehicles/On-Track or Mobile Equip./Forklifts – Prohibited; Operation of Cranes, Hoists, or Machinery – Prohibited; Work on or Near Moving Trains, Freight Cars or Locomotives – Prohibited; Work Requiring Critical Decision Making – Prohibited; Work at Unprotected Heights over 4 Feet Above the Work Surface – Prohibited. The letter further stated that the "permanent work restrictions cannot be accommodated by your supervisor."

27.     According to doctor's statement signed by Chief Medical Officer Dr. John Holland and dated June 28, 2018, the permanent restrictions issued included a return-to-work date of 12/31/9999.

28.     Carrillo remains capable of working in his position to this day.

29.     On April 10, 2020, Carrillo timely filed a Charge of Discrimination with the EEOC and cross-filed with the Texas Workforce Commission. The EEOC issued a determination on November 16, 2020. The Texas Workforce Commission issued a determination on December 10, 2020.

30.     On February 19, 2016, counsel for Carrillo, on behalf of six named plaintiffs and those similarly situated, filed a First Amended Complaint against Union Pacific in the Western District of Washington, alleging disability discrimination in violation of the ADA, along with state law. The case was thereafter transferred to the District of Nebraska. *See Quinton Harris et al. v. Union Pacific Railroad Company*, Case No. 8:16-cv-381 (D. Neb.).

31.     Because he was a putative class member in the *Harris* case, Carrillo's claims under the ADA had been subject to tolling during the pendency of litigating the class-wide claims, pursuant to the Supreme Court's ruling in *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345

(1983).

32.  This court certified the class action in February 2019; however, the Eighth Circuit Court of Appeals reversed the certification decision on March 24, 2020.

33.  As a result of *Crown Cork* tolling, Carrillo had 300 days from the date of the Eighth Circuit's order to file an EEOC charge and 180 days from the date of the Eighth Circuit's order to file a Texas charge. Shortly after the Eighth Circuit issued its order reversing class certification, the parties entered into a tolling agreement, extending the statute of limitations for Carrillo's and other putative class members' claims by an additional sixty (60) days. Plaintiff timely initiates the present lawsuit.

## CAUSES OF ACTION

### COUNT I
### DISABILITY DISCRIMINATION, IN VIOLATION OF THE ADA

34.  Carrillo is disabled within the meaning of the ADA.

35.  Carrillo is a qualified individual within the meaning of the ADA.

36.  Section 12112(a) of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

37.  Union Pacific discriminated against Carrillo on the basis of disability when it issued him work restrictions, removed him from his job, and refused to allow him to return to it.

38.  Because Union Pacific violated 42 U.S.C. § 12112, Carrillo has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Carrillo is also entitled to attorneys' fees and costs incurred in connection with these claims.

39. Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for Carrillo's rights and safety. As a result, Carrillo is entitled to punitive damages.

## COUNT II
## UNLAWFUL SCREENING, IN VIOLATION OF THE ADA

40. Carrillo is disabled within the meaning of the ADA.

41. Carrillo is a qualified individual within the meaning of the ADA.

42. Section 12112(a) of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

43. Section 12112(b)(6) of the ADA defines "discriminat[ing] against a qualified individual on the basis of disability" as including "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity[.]"

44. Union Pacific discriminated against Carrillo on the basis of disability by imposing selection criteria, including medical screening, that screens out, tends to screen out, or has a disparate impact on individuals who disclose disabilities.

45. Because Union Pacific violated 42 U.S.C. § 12112, Carrillo has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Carrillo is also entitled to attorneys' fees and costs incurred in connection with these claims.

46. Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for Carrillo's rights and safety. As a result, Carrillo is entitled to punitive damages.

## COUNT III
## FAILURE TO ACCOMMODATE, IN VIOLATION OF THE ADA

47. Carrillo is disabled within the meaning of the ADA.

48. Carrillo is a qualified individual within the meaning of the ADA.

49. Section 12112(a) of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

50. Section 122112(b)(5)(A) of the ADA defines "discriminat[ing] against a qualified individual on the basis of disability" as including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]"

51. Union Pacific discriminated against Plaintiffs by failing to provide him reasonable accommodations.

52. Because Union Pacific violated 42 U.S.C. § 12112, Carrillo has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Carrillo is also entitled to attorneys' fees and costs incurred in connection with these claims.

53. Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for Carrillo's rights and safety. As a result, Carrillo is entitled to punitive

damages.

## PRAYER FOR RELIEF

**WHEREFORE, Joseph Carrillo prays for judgment against Union Pacific as follows:**

1. That the practices of Union Pacific complained of herein be determined and adjudged to constitute violations of the ADA;

2. An injunction against Union Pacific and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

3. For an award of damages arising from loss of past and future income, emotional distress, and other compensatory damages in excess of $75,000.00;

4. Pre-judgment interest, as provided by law;

5. For Carrillo's costs, disbursements and attorneys' fees pursuant to law;

6. For an award of punitive damages;

7. For all relief available under the ADA;

8. For such other and further relief available by statute; and

9. For such other and further relief as the Court deems just and equitable.

Date: February 5, 2021

**NICHOLS KASTER, PLLP**

*s/Michele R. Fisher*
Michele R. Fisher* (MN # 303069)
    fisher@nka.com
James H. Kaster** (MN # 53946)
    kaster@nka.com
Neil D. Pederson** (MN # 0397628)
    npederson@nka.com
80 South Eighth Street
4700 IDS Center

Minneapolis, Minnesota 55402-2242
Telephone: (612) 256-3200
Fax: (612) 338-4878

**ATTORNEYS FOR PLAINTIFF**

*admitted generally to W.D.Tex.*
*\** *pro hac vice application forthcoming*

11