UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JOSEPH CARRILLO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-21-CV-00026-FM |
| | § | |
| UNION PACIFIC RAILROAD CO., | § | |
| | § | |
| Defendant. | § | |

## ORDER GRANTING PARTIAL MOTION TO DISMISS

Before the court are "Defendant Union Pacific Railroad Company's Partial Motion to Dismiss Plaintiff's Complaint Under Rule 12(b)(6) and Memorandum in Support" ("Motion") [ECF No. 13], filed April 12, 2021, by Defendant Union Pacific Railroad ("Union Pacific"); "Plaintiff's Response to Defendant's Partial Motion to Dismiss under Rule 12(b)(6)" ("Response") [ECF No. 22], filed May 6, 2021 by Plaintiff Joseph Carrillo ("Carrillo"); and "Defendant Union Pacific Railroad Company's Reply Brief Supporting it's Partial Motion to Dismiss Plaintiff's Complaint under Rule 12(b)(6)" ("Reply") [ECF No. 23], filed May 13, 2021. After due consideration of the Motion, Response, Reply, and applicable law, the Motion is **GRANTED**.

**I. BACKGROUND**

*A. Factual Background*

This action arises out of a dispute between Plaintiff and his former employer, Defendant. Defendant hired Plaintiff on or around January 28, 2013 as a Diesel Electrician.[1] On or around February 1, 2014, Defendant revised its medical rules for employees to include a "fitness-for-

---

[1] "Complaint Jury Trial Demanded" ("Compl.") 5 ¶ 19, ECF No. 1, filed Feb. 5, 2021.

1

duty" ("FFD") program.[2] The program required employees in certain positions, including that held by Plaintiff, to disclose "Reportable Health Events."[3] Defendant defines a reportable health event as one of the following: a cardiovascular condition, seizure or loss of consciousness, a significant vision or hearing change, diabetes treated with insulin, or severe sleep apnea.[4]

Around June 30, 2017, Plaintiff experienced a "brief period of unresponsiveness" while at home.[5] On the same day, Plaintiff's wife called Defendant to inform it of Plaintiff's absence and to briefly explain what happened.[6] The next day, Plaintiff returned to work and was informed that he was under FFD review.[7] He was placed on involuntary medical leave pending evaluation. On two occasions, July 17, 2017 and January 17, 2018, Defendant requested additional medical records from Plaintiff.[8] Plaintiff supplied the information, but Defendant extended his medical leave.[9] In total, Plaintiff remained on involuntary medical leave from July 1, 2017 to June 20, 2018.

On June 20, 2018, Defendant released Plaintiff to return to work with permanent restrictions.[10] The restrictions prohibited Plaintiff from operating machinery such as forklifts, cranes, and hoists.[11] Additionally, Defendant prohibited Plaintiff from performing jobs requiring

---

[2] *Id.* at 3 ¶ 9.

[3] *Id.* at 3 ¶ 10.

[4] *Id.*, Ex. A.

[5] *Id.* at 5 ¶ 21.

[6] Compl. 5 ¶ 21.

[7] *Id.* at 5 ¶ 22.

[8] *Id.* at 5 ¶¶ 23, 25.

[9] *Id.*

[10] *Id.* at 6 ¶ 26.

[11] *Id.* at 5 ¶¶ 23, 25.

2

"critical decision making."[12] The permanent work restrictions came with a signed statement by Defendant's Chief Medical Officer and stated Plaintiff's return-to-work date was December 31, 9999.[13] Plaintiff alleges he has always been fit for his role, but Defendant prevented him from returning to his position.[14] Plaintiff alleges Defendant discriminated against him on the basis of a disability.[15] He further claims Defendant failed to make reasonable accommodations for him despite knowing of his disability.[16]

### B. Procedural Background

On February 19, 2016, six named plaintiffs and others similarly situated, filed suit against Defendant in *Quintin Harris et al. v. Union Pacific Railroad Company*. The named plaintiffs alleged they suffered disability discrimination in violation of the Americans with Disabilities Act ("ADA").[17] The named plaintiffs alleged, on a class-wide basis, disability discrimination based on disparate treatment, disparate impact, and unlawful medical inquiries.[18] Additionally, the named plaintiffs, independent from the class, pleaded failure-to-accommodate claims.[19] Plaintiff alleges he was a putative class member in the case.[20] Like the *Harris* plaintiffs, Plaintiff claims

---

[12] Compl. at 5 ¶¶ 23, 25.

[13] This court interprets this unlikely date to indicate Defendant placed Plaintiff on indefinite leave.

[14] *Id.* at 6 ¶ 28.

[15] *Id.* at 7 ¶ 37, 8 ¶ 44.

[16] *Id.* at 9 ¶ 51.

[17] *Id.* at 6 ¶ 30.

[18] "Defendant Union Pacific Railroad Company's Partial Motion to Dismiss Plaintiff's Complaint Under Rule 12(b)(6) and Memorandum in Support" ("Mot.") 4, ECF No. 13, filed Apr. 12, 2021.

[19] *Id.*

[20] *Id.* at 6 ¶ 31.

Defendant discriminated against him under both disparate treatment and disparate impact theories of liability through its FFD program.

On August 17, 2018, the named plaintiffs moved to certify the class only with respect to their disparate treatment claim, voluntarily abandoning their disparate impact claim.[21] The district court certified the class, but the Eighth circuit reversed the certification on March 24, 2020.[22] On April 10, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and cross-filed with the Texas Workforce Commission.[23] The EEOC issued a determination on November 16, 2020.[24] Plaintiff proceeded to file this action on February 5, 2021.

*C.  Parties Arguments*

Defendant claims Plaintiff's disparate impact claim was only tolled until the *Harris* plaintiffs moved for class certification. Tolling ended for Plaintiff's disparate impact claim when the *Harris* plaintiffs voluntarily abandoned its class certification.[25] Defendant argues Plaintiff's failure-to-accommodate claim was never tolled since the *Harris* plaintiffs never pleaded the claim on a class-wide basis.[26]

Plaintiff alleges both his disparate impact and failure-to-accommodate claims were tolled throughout the *Harris* lawsuit as he was a putative class member.[27] He argues tolling continued

---

[21] Mot. at 15.

[22] Compl. at 6 ¶ 32.

[23] *Id.* at 6 ¶ 29.

[24] *Id.*

[25] Mot. at 8.

[26] *Id.* at 16.

[27] *Id.* at 6.

4

for both claims until the Eighth Circuit decertified the class with respect to the disparate treatment claim. He also asserts his failure-to accommodate claim was tolled. He reasons that, for tolling to apply, his claims only needed to have a "legal and factual nexus" with those asserted by the class action in *Harris*.[28]

## II. APPLICABLE LAW

Federal Rule of Civil Procedure Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim for which relief can be granted."[29] "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[30] To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[31] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[32] "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[33] Therefore, a complaint is not required to set out "detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."[34] Although the

---

[28] "Plaintiff's Response to Defendant's Partial motion to Dismiss Under Rule 12(b)(6)" ("Resp.") 1, ECF No. 22, filed May 6, 2021.

[29] FED. R. CIV. P. 12(b)(6).

[30] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002) (internal quotation marks and citation omitted); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

[31] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[32] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[33] *Id.* (citing *Twombly*, 550 U.S. at 556).

[34] *Twombly*, 550 U.S. at 555.

5

court must accept well-pleaded allegations in a complaint as true, it does not afford conclusory allegations similar treatment.[35]

## III. DISCUSSION

### A. Whether Plaintiff Properly Pleaded Both Disparate-Treatment and Disparate-Impact Causes of Action

The ADA prohibits employment discrimination "against a qualified individual on the basis of disability."[36] Under the ADA, a plaintiff can assert claims under both disparate-treatment and disparate-impact theories of liability.[37] Disparate treatment claims are those that require "proof and finding of discriminatory motive."[38] To prove disparate treatment under the ADA, "a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability."[39] Disparate impact claims, on the other hand, address facially neutral employment policies with a disproportionately adverse effect on a protected class.[40] Plaintiffs are not required to prove the adverse action occurred *because of* their disability, only that there is a causal relationship between the identified practice and the disparate impact.[41]

Pursuant to § 12112(b)(6) of the ADA, it is unlawful for an employer to use "qualification standards, employment tests or other selection criteria that screen out or tend to

---

[35] *See Kaiser Aluminum & Chem. Sales, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).

[36] 42 U.S.C. § 12112(a).

[37] See *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003) ("Both disparate-treatment and disparate-impact claims are cognizable under the ADA.").

[38] *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977).

[39] *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014).

[40] *Hebert v. Monsanto*, 682 F.2d 1111, 1116 (5th Cir. 1982).

[41] *Crawford v. U.S. Dep't of Homeland Sec.*, 245 F. App'x 369, 379 (5th Cir. 2007).

screen out an individual with a disability or a class of individuals with disabilities."[42] However, such a policy may be lawful if it is "shown to be job-related for the position in question and is consistent with business necessity."[43] The parties disagree as to whether claims under this provision can be based on disparate treatment, disparate impact, or either theory of liability.

The Supreme Court ruled "antidiscrimination laws must be construed to encompass disparate-impact claims when their text refers to the *consequences of actions* . . . and where that interpretation is *consistent with statutory purpose*."[44] Applying this standard to unlawful screening, the provision makes direct reference to policies whose effect is to "screen out or tend to screen out" those with disabilities. Interpreting § 12112(b)(6) to allow disparate impact claims is consistent with the codified purposes of the ADA.[45] Employers cannot escape liability simply because discriminatory intent cannot be proved. Additionally, the Fifth Circuit recognized "the disparate impact theory has been adopted entirely by the ADA," citing § 12112(b)(6) as evidence.[46] Thus, disparate-impact theories of liability are acceptable under § 12112(b)(6). Plaintiff properly pleaded the theory here.

Plaintiff also properly pleaded disparate treatment. Plaintiff cited directly to both § 12112(a) and § 12112(b)(6) in his complaint. Section 12112(a) establishes the general rule that

---

[42] 42 U.S.C. § 12112(b)(6).

[43] *Id.*

[44] *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Comtys. Project, Inc.*, 576 U.S. 519, 533 (2015) (emphasis added).

[45] *See* 42 U.S.C. §§ 12101(b)(1) (stating that the intent of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities") and 12101(b)(2) ("to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities").

[46] *Gonzales v. City of New Braunfels*, 176 F.3d 834, 839 n.26 (5th Cir. 1999).

7

employers may not "discriminate against a qualified individual on the basis of disability"[47] Section 12112(b) goes on to define what discrimination on the basis of a disability includes.[48] Defendant's assertion that citing § 12112(a) was "irrelevant" to Plaintiff's unlawful screening claim is incorrect.[49] Section 12112(a) is the foundation on which any ADA claim may be brought. Courts recognize that the ADA allows for disparate treatment claims under its general prohibition of disability discrimination.[50] Furthermore, Plaintiff's use of "or" in his unlawful screening claim indicates that he intended to plead disparate treatment and disparate impact in the alternative.[51] Thus, although § 12112(b)(6) is a disparate impact provision, Plaintiff properly pleaded both theories of liability.

*B.    Whether American Pipe Tolling Applies*

Class action lawsuits allow multiple plaintiffs to bring similar claims against a common defendant.[52] The purpose of class actions is rooted in judicial economy. They are designed to reduce "repetitive and unnecessary filings" by consolidating many claims into one lawsuit.[53] Federal Rule of Civil Procedure 23(c)(1) requires courts to certify the class action "[a]t an early practicable time" after the lawsuit is filed.[54] Certification is the process by which the court

---

[47] 42 U.S.C. § 12112(a).

[48] *See id.* § 12112(b).

[49] Mot. at 10.

[50] 42 U.S.C. § 12112(a); *See EEOC v. LHC Grp., Inc.*, 773 F.3d 688 (5th Cir. 2014); *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568 (7th Cir. 2001); *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805 (6th Cir. 2020); *Holly v. Clairson Indus., LLC*, 492 F.3d 1247 (11th Cir. 2007).

[51] Compl. at 8 ¶ 44.

[52] FED. R. CIV. P. 23(a).

[53] *Hall v. Variable Annuity Life Ins. Co.*, 727 F.3d 372, 375 (5th Cir. 2013).

[54] FED. R. CIV. P. 23(c)(1).

defines the class covered by the lawsuit and the issues it will address on a class-wide basis.[55] Class members may be forced to intervene or bring their own lawsuits if the class is not certified.[56]

Prior to *American Pipe*, putative class members' claims could be barred unless the class members filed individual suits, or intervened, while the class action was ongoing.[57] In other words, plaintiffs had no choice but to file redundant claims while waiting for the court to make a final decision on certification. If certification was granted, then a plaintiff would have two ongoing suits in which the same causes of action were pleaded. This outcome was antithetical to the goal of consolidating claims to limit unnecessary filings.

To avoid this issue, and maintain class action efficiency, the Supreme Court ruled in *American Pipe*, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."[58] The effect of this ruling was to "'freeze the clock' for putative class members once a class action lawsuit was filed."[59] No longer would putative class members have to intervene to keep the statute of limitations from running on their claims. The doctrine was later extended in *Crown, Cork* to toll the statute of limitations on claims brought by

---

[55] FED. R. CIV. P. 23(c)(1)(B).

[56] *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983).

[57] *See, e.g., Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 560 (1974) (addressing the lower court's determination that plaintiffs were "absolutely barred" from intervening since the statute of limitations ran during the pendency of the class action.).

[58] *Am. Pipe*, 414 U.S. at 560.

[59] *Hall*, 727 F.3d at 375.

putative class members in individual lawsuits.[60] This doctrine became known as "American Pipe tolling."

Tolling does not continue indefinitely.[61] Certain events can trigger the end of tolling. For instance, upon denial of certification, or class decertification, the statute of limitations begins running once again.[62] Once a class is decertified, "putative class members ha[ve] no reason to assume that their rights [a]re being protected" by the class suit.[63] At that point, plaintiffs must take independent steps to protect their rights. This might include filing their own lawsuits, or intervening in an existing one, before the statute of limitations runs.

The parties in this case disagree as to what events may trigger the end of tolling for a cause of action. Additionally, they debate what claims qualify for tolling in the first place. Each will be discussed in turn.

1. <u>Tolling Ceases for Claims that are Voluntarily Abandoned</u>

The primary issue is whether tolling ends for individual claims that are voluntarily abandoned on a class-wide basis. If tolling ended when the named plaintiffs in *Harris* moved to certify only the disparate treatment claim, then Plaintiff's disparate impact claim tolled until 2018. If voluntarily abandoning a claim does not cease tolling, then Plaintiff's claim was tolled until 2019 when the Eighth Circuit issued a final denial of certification.

This court concludes equitable tolling ended for Plaintiff's disparate impact claim when the *Harris* class voluntarily abandoned the claim's class certification. As the Supreme Court

---

[60] *Crown, Cork*, 462 U.S. at 349.

[61] *Hall*, 727 F.3d at 375.

[62] *Id.*

[63] *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 520 (5th Cir. 2008).

10

clarified, *American Pipe* tolling does not create a "substantive right to bring ... claims outside the statute of limitations," nor does it "abridge, enlarge, or modify any substantive right."[64] The purpose of the statute of limitations is to prevent plaintiffs from "sleeping on their rights" and unfairly surprising defendants with litigation.[65] Once claims are voluntarily abandoned, defendants no longer have a way to determine the number and scope of individual claims.

Further, putative class members no longer have reason to believe their rights are being protected by the lawsuit. Even if class certification had ultimately been affirmed by the Eighth Circuit in *Harris*, Plaintiff's rights concerning his disparate impact claim would not have been protected. From that point forward, the court would only be able to provide a class-wide remedy for disparate treatment. The named plaintiffs no longer represented Plaintiff with respect to his disparate impact claim when they moved to certify only their disparate treatment cause of action. Thus, tolling of Plaintiff's disparate impact claim stopped when the *Harris* named plaintiffs voluntarily abandoned its class-wide disparate impact claim.

There is no reason to assume voluntary abandonment of claims should operate any differently than a court's judgment denying certification.[66] In *Hall*, the Fifth Circuit held that actions taken by the court that are the "functional equivalent of a decertification" cause tolling to stop.[67] For this reason, vacatur "[has] equivalent tolling consequences" as decertification.[68]

---

[64] *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1810 (2018).

[65] *Crown, Cork*, 462 U.S. at 352.

[66] *See Texas v. Settling Plaintiffs*, 330 F. App'x 483, 485 (5th Cir. 2009) (refusing to consider an appeal concerning the fairness of a class action settlement agreement because plaintiffs voluntarily abandoned their appeal of the settlement's certification.); *Gamble v. FCA U.S. LLC*, 933 F.3d 534, 536 (7th Cir. 2021) (ruling only on plaintiff's appeal of summary judgement for her Title VII claim because it determined she voluntarily abandoned her ADEA and ADA claims.).

[67] *Hall*, 727 F.3d at 376.

[68] *Id.*

11

While the Eighth Circuit did not vacate or decertify the disparate impact cause of action in *Harris*, a similar rationale applies. Once plaintiffs moved to certify only their disparate treatment claim, the court in *Harris* no longer presided over the disparate impact cause of action on a class-wide basis. Therefore, at the time the class moved for certification, the named plaintiffs ceased to be representatives for those putative class members with only disparate impact and unlawful medical inquiry claims. While Plaintiff remained a putative class member, the named plaintiffs only represented him with respect to his disparate treatment cause of action. Therefore, extending the Fifth Circuit's reasoning in *Hall*, Plaintiff's disparate impact claim ceased to be tolled when the class moved for certification.

Finally, Plaintiff's argument that American Pipe tolling applies to parties, as opposed to specific claims, is unavailing. It is universally recognized that tolling applies to statutes of limitation.[69] The statutes of limitation run for specific claims, not the parties that bring those claims. Thus, tolling could only apply to Plaintiff's claims, rather than to Plaintiff himself.

In sum, Plaintiff's disparate impact claim was only tolled until the *Harris* class moved for certification. At that time, Plaintiff's rights were protected only with respect to his disparate treatment cause of action. Because Plaintiff failed to bring a claim within 300 days of August 17, 2018, his disparate impact claim is barred by the statute of limitations.[70]

---

[69] See *California Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2050 (2017) ("The question whether a tolling rule applies to a given *statutory time bar* is one of statutory intent."); *Taylor v. United Parcel Serv., Inc.*, 554 F.3d at 520 ("the court relied on the principles established in those cases to determine when *tolling ends for the claims* of a certified class member"); *China Agritech*, 138 S. Ct. at 1802 (The efficiency and economy of litigation "*support tolling of individual claims* . . .").

[70] 42 U.S.C. § 12117 (applying the 300–day statute of limitations listed in 42 U.S.C.2000e–5(e) to ADA claims)

2. *Failure-to-Accommodate claims not pleaded on a class-wide basis are not tolled*

The parties disagree about whether Plaintiff's claims must be identical to those pleaded in *Harris* to be tolled. Specifically, whether tolling applied to Plaintiff's failure-to-accommodate claim under § 12112(b)(5)(A) even though it was never pleaded on a class-wide basis in *Harris*. Plaintiff does not dispute that his claims would have been time-barred without the application of *American Pipe* tolling. However, Plaintiff argues his failure-to-accommodate claim is legally and factually similar enough to claims pleaded on a class-wide basis in Harris to warrant the application of *American Pipe* tolling.[71]

In defending the fairness of tolling individuals' claims during the pendency of a class action under *American Pipe,* the Supreme Court held that once a class action is filed, defendants have notice of the "substantive claims being brought against them."[72] However, as Justice Powell cautioned, "[t]he tolling rule of American Pipe is a generous one, inviting abuse."[73] Such abuse can arise when plaintiffs bring causes of action unrelated to those pleaded on a class-wide basis and therefore result in unfair surprise to defendants by litigation over claims that passed the appropriate statute of limitations.[74]

In *Johnson*, the Supreme Court clarified that its *American Pipe* ruling "depended heavily on the fact that those filings involved exactly the same cause of action subsequently asserted."[75] When the class claims are the same as those subsequently filed, "the prior filing . . . necessarily

---

[71] Resp. at 1.

[72] *Crown, Cork,* 462 U.S. at 353; *Williams v. Boeing Co.,* 517 F.3d 1120 (9th Cir. 2008).

[73] *Crown, Cork,* 462 U.S. at 354 (Powell, J., concurring).

[74] *See Johnson v. Ry. Exp. Agency, Inc.,* 421 U.S. 454, 467 (1975).

[75] *Id.*

13

operate[s] to avoid the evil against which the statute of limitations was designed to protect."[76] Therefore, it is incumbent on the courts not to allow plaintiffs to "raise different or peripheral claims following the denial of class status."[77] When the claims are different or peripheral, the prior filings do not warn Defendants of the scope and number of claims they can expect.

While disparate treatment and failure-to-accommodate claims can both be brought under the ADA, they are independent causes of action.[78] The elements of unlawful screening claims, are distinguishable from those of failure-to-accommodate claims and require different evidence to prove.[79] Unlawful screening requires a plaintiff to identify "qualification standards, employment tests or other selection criteria" that adversely impacted him on the basis of his disability.[80] In contrast, failure-to-accommodate claims require a plaintiffs to prove a defendant was aware of the plaintiff's disability but failed to make reasonable accommodations.[81]

Here, Plaintiff's failure-to-accommodate cause of action requires facts that occurred after the alleged unlawful screening. Plaintiff needs to prove either (1) he was able to "perform the essential functions of the job in spite of [his] disability," or, (2) that "a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of the job."[82] Neither element is relevant to the unlawful screening inquiry. Thus, failure-to-

---

[76] *Id.*

[77] *Crown, Cork*, 462 U.S. at 354 (Powell, J., concurring).

[78] *Windhauser v. Bd. of Supervisors for Louisiana State Univ. & Agric. & Mech. Coll.*, 360 F. App'x 562 (5th Cir. 2010).

[79] *Compare Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450 (5th Cir. 2013), *with Stalcup v. Commc'n Workers of Am.*, 44 F. App'x 654 (5th Cir. 2002).

[80] 42 U.S.C. § 12112(b)(6); *See Evers v. Alliant Techsys., Inc.*, 241 F.3d 948, 953 (8th Cir. 2001).

[81] *See Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir.1996).

[82] *Id.*

accommodate claims do not "invariably . . . concern the same evidence, memories, and witnesses" as unlawful screening claims.[83] Given these distinctions, the *Harris* class action did not provide Defendant with "fair notice" of Plaintiff's failure-to accommodate cause of action. Other districts considering identical suits brought by *Harris* class members against Defendant reached the same conclusion.[84] Consequently, *Harris* did not toll Plaintiff's failure-to-accommodate claim and the statute of limitations passed. Thus, the claim is time-barred.

## IV. CONCLUSION

Accordingly, it is **HEREBY ORDERED** that "Defendant Union Pacific Railroad Company's Partial Motion to Dismiss Plaintiff's Complaint Under Rule 12(b)(6) and Memorandum in Support" [ECF No. 13] is **GRANTED**.

**SIGNED AND ENTERED** this ___ day of **July 2021**.

FRANK MONTALVO
**UNITED STATES DISTRICT JUDGE**

---

[83] *Am. Pipe*, 414 U.S. at 562 (Blackmun, J., concurrence).

[84] *See Krehbiel v. Union Pac. R.R. Co.*, No. 219-CV-02002-JAR-JPO, 2019 WL 3387049 (D. Kan. July 26, 2019); *Goeldner v. Union Pac. R.R. Co.*, No. 4:19-CV-00692-NKL, 2020 WL 1148584 (W.D. Mo. Mar. 9, 2020); *Donahue v. Union Pac. R.R. Co.*, No. 21-CV-00448-MMC, 2021 WL 2458351 (N.D. Cal. June 16, 2021).

15