THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

Joseph Carrillo,

                    Plaintiff,

            vs.                                         Case No. 3:21-cv-00026-FM

Union Pacific Railroad Co.,

                    Defendant.

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S
<u>MOTION FOR SUMMARY JUDGMENT</u>

CONSTANGY, BROOKS, SMITH & PROPHETE LLP

Lara C. de Leon (TX #24006957)
1100 NW Loop 410, Suite 700
San Antonio, TX 78213
Telephone: 512.382.8800
ldeleon@constangy.com

Robert L. Ortbals, Jr. (MO Bar #56540)*
Katie M. Rhoten (MO Bar #69287)*
680 Craig Rd., Ste. 400
St. Louis, MO 63141
Telephone: (314) 338-3740
Facsimile: (314) 665-1707
rortbals@constangy.com
krhoten@constangy.com

**Attorneys for Defendant Union Pacific Railroad Company**

* Admitted *Pro Hac Vice*

i

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT AND AUTHORITIES ...........................................................................................3

**I. Union Pacific is entitled to summary judgment on Carrillo's disparate-treatment claim (Count I)** ..............................................................................................3

**A. A fitness-for-duty determination is not direct evidence of disability discrimination** ...3

**B. Carrillo cannot meet his burden of proof under the indirect evidence framework.** ......5

1. Carrillo was not disabled under the ADA based on his loss of consciousness. ...............5

*a. Carrillo's loss of consciousness was not an ADA disability under the actual or record-of disability prongs.* ...........................................................................6

*b. Carrillo was not regarded-as disabled based on his loss of consciousness.* ...........8

2. Carrillo was not qualified under the ADA because he could not safely perform the essential functions of his job. ...........................................................................11

3. Carrillo did not suffer an adverse employment action because of a disability. .............14

4. Regardless, Union Pacific had a legitimate, non-discriminatory reasons for its actions and Carrillo cannot prove pretext for discriminatory intent. ...........................................15

**II. Carrillo is not entitled to front pay.** ...................................................................18

**III. Union Pacific is entitled to summary judgment on Carrillo's punitive damages claim** . 19

CONCLUSION ....................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Adair v. City of Muskogee*, 823 F.3d 1927 (10th Cir. 2016)............................................................ 9

*Austgen v. Allied Barton Security Svcs.*, No. H-18-0949, 2019 WL 3436514, at *4 (W.D. Tex. July 30, 2019)........................................................................................................................................... 8

*Bennett v. Calabrian Chem. Corp.*, 324 F.Supp.2d 815 (E.D. Tex. 2004)...................................... 9

*Best v. UTI Logistics*, No. G:06-0300, 2008 WL 62210, at *4 (S.D. Tex. Jan. 3, 2008) ............ 16

*Bohner v. Union Pac. R.R. Co.*, No. 4:19-cv-02581-SEP, 2021 WL 3363063, at *4 (E.D. Mo. Aug. 3, 2021)........................................................................................................................................ 4, 18

*Burns v. Nielson*, 456 F.Supp.3d 807 (W.D. Tex. 2020)...................................................................... 8

*Coleman v. Penn. State Police,* 561 Fed. Appx. 138 n.13 (3d Cir. 2014) .................................... 15

*Credeur v. La. Through Office of Atty. Gen.*, 860 F.3d 785 (5th Cir. 2017) ................................ 12

*E.E.O.C. v. Steel Painters, LLC*, 433 F.Supp.3d 989 (5th Cir. 2020)............................................. 12

*Easterling v. Tensas Parish Sch. Bd.*, No. 14-0473, 2016 WL 1452435, at *3 (W.D. La. April 13, 2016)........................................................................................................................................................ 17

*Fabela v. Corpus Christi Indep. Sch. Dist.*, No. 2:19-CV-387, 2020 WL 2576175, at *5 (S.D. Tex. May 21, 2020)................................................................................................................................... 6

*Forrest v. Dynamic Security Corp.*, No. CIV.A. 00-3423, 2002 WL 1204917, at *14 (E.D. La. May 2, 2002) ......................................................................................................................................... 18

*Garcia v. City of Amarillo, TX*, No. 2:18-CV-95-Z-BR, 2020 WL 4208060, at *9 (N.D. Tex. July 22, 2020)................................................................................................................................................. 12

*Gober v. Frankel Family Trust*, 537 Fed. Appx. 518 (5th Cir. 2013) .......................................... 11

*Goode v. BNSF Ry., Inc.*, No 18-319, 2020 WL 1527864, at *6 (N.D. Tex. March 20, 2020)... 14, 17

*Harris v. Dallas Cnty. Hosp. Dist.*, No. 3:14-CV-3663-D, 2016 WL 2914847, at *10 (N.D. Tex. May 19, 2016) ................................................................................................................................... 5, 11

*Hinojosa v. Jostens Inc.*, 128 Fed. Appx. 364, 368 (5th Cir. 2005) ............................................. 14

*Jackson v. Union Pac. R.R. Co.*, No. 4:19-cv-00069-RGE-RAW, 2021 WL 1726895, at *11 (S.D. Iowa Mar. 29, 2021)....................................................................................................... 4, 7, 10, 14, 18

*Jones v. Kerrville State Hosp.*, 142 F.3d 263 (5th Cir. 1998)........................................................... 11

*Ketcher v. Wal-Mart Stores, Inc.*, 122 F. Supp. 2d 747, 754 (S.D. Tex. 2000)....................... 10, 17

*Kitchen v. BASF*, 952 F.3d 247, 252 (5th Cir. 2020)................................................................... 3, 4

*Kittilsen v. Gen. Supply & Servs., Inc.*, No. 3:18-CV-00931-E, 2020 WL 4904488...................... 4

*Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999) ................................................................... 19

*Krehbiel v. Union Pac. R.R. Co.*, No. 19-2002-JAR, 2020 WL 5503363, at *7-*8 (D. Kan. Sept. 11, 2020)........................................................................................................................................... 4, 13, 18

*Laxton v. Gap Inc.*, 333 F.3d 572 (5th Cir. 2003).............................................................................. 5

*Lee v. Southern Homes Sites Corp.*, 429 F.2d 290 (5th Cir. 1970)................................................ 19

*LeMaire v. La.*, 480 F.3d 383,(5th Cir. 2007)..................................................................................... 18

*Lewis Grocer Co. v. Holloway,* 874 F.2d 1008 (5th Cir. 1989)...................................................... 18

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ............................................................... 3

iii

*Middleton v. Ball-Foster Glass Container Co.*, 139 F. Supp. 2d 782 (N.D. Tex. 2001)............... 9

*Miles-Hickman v. David Powers Homes, Inc*., 613 F.Supp.2d 872 (S.D. Tex. 2009)................. 18

*Morris v. American National Can Corp.*, 952 F.2d 200 (8th Cir. 1991) ...................................... 19

*Morvay v. Mahhielse Tool & Die Co.*, 708 F.2d 229 (6th Cir. 1983).......................................... 18

*Mosley v. Bexar Cnty*., No. SA-17-CV-00583-XR, 2020 WL 589540, at *16 (W.D. Tex. Feb. 5, 2020)........................................................................................................................................ 16

*Nall v. BNSF Ry. Co.*, 917 F.3d 335 (5th Cir. 2019) ...................................................... 4, 12, 13, 14

*Pisani v. Conrad Industries, Inc*., No. 6:17-cv-00393, 2018 WL 701531, at *2 (W.D. La. Feb. 1, 2018)........................................................................................................................................ 9

*Randall v. United Petroleum Transports, Inc.*, 131 F. Supp. 3d 566 (W.D. La. 2015)................. 8

*Raytheon Co. v. Hernandez*, 540 U.S. 44, 52-55 (2003) ............................................................. 16

*Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143 (2000)...................................... 5

*Rizzo v. Blues Mgmt., Inc.,* No. 4:16-cv-01017, 2017 WL 549016, at *4 (S.D. Tex., January 24, 2017)........................................................................................................................................ 19

*Rodriguez v. Eli Lily & Co.*, 820 F.3d 759, 765 (5th Cir. 2016)................................................... 3

*Sanchez v. City of San Antonio*, 794 Fed. Appx. 444 (5th Cir. 2020) ........................................ 15

*Stern v. St. Anthony's Health Ctr.,* 788 F.3d 276 (7th Cir. 2015)................................................ 15

*Sulcer v. Louisiana*, No. 17-167-RLB, 2019 WL 1573701, at *6 (M.D. La. Apr. 10, 2019)....... 16

*Sutherland v. Edison Chouest Offshore, Inc*., No. 19-414, 2020 WL 5436654, at *7 (E.D. La. Sept. 10, 2020) ................................................................................................................. 12, 14, 17

*Tanner v. BC LaPlace, LLC,* No. 17-5141, 2019 WL 1382302, at *8 (E.D. La. March 27, 2019) ................................................................................................................................................. 10

*Trevillion v. Union Pac. R.R.*, No. 18-610, 2021 WL 1762112, at *5-6 (W.D. La. May 4, 2021) 9, 14, 15, 17

*Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011)................................................. 16

*Washington v. Occidental Chem. Corp*., 24 F.Supp.2d 713 (S.D. Tex. 1998) ............................ 9

*Watt v. City of Crystal*, No. 14-CV-3167 (JNE/JJK), 2015 WL 7760166, at *5 (D. Minn. Dec. 2, 2015)........................................................................................................................................ 10

*Williams v. Trader Pub. Co*., 218 F.3d 481 (5th Cir. 2000) ........................................................ 19

*Willis v. Noble Envtl. Power, LLC*, 143 F. Supp. 3d 475 (N.D. Tex. 2015)................................ 7

*Wilson v. L&B Realty Advisors, LLP*, No. 3:20-CV-2059-G, 2022 WL 102564, at *14 (N.D. Tex. Jan. 11, 2022)......................................................................................................................... 16

*Witchet v. Union Pac. R.R. Co.*, No. 8:18CV187, 2020 WL 12762513, at *9 (D. Neb. Feb. 21, 2020)........................................................................................................................................ 13

*Wurzel v. Whirlpool Corp.*, No. 3:09CV498, 2010 WL 1495197, at *5-7, 9-10 (N.D. Ohio Apr. 14, 2010)................................................................................................................................... 11

## Statutes

29 C.F.R. § 1630.14(c)............................................................................................................ 15, 17

29 C.F.R. § 1630.2(h)(1)............................................................................................................... 6

29 C.F.R. § 1630.2(j)(1)(ii)........................................................................................................... 6

29 C.F.R. § 1630.2(l)(3)............................................................................................................... 15

29 C.F.R. § 1630.2(m) ............................................................................................... 11
29 C.F.R. § 1630.2(n)(1) ........................................................................................... 11
29 C.F.R. § 1630.2(n)(3) ........................................................................................... 11
29 C.F.R. § 1630.2(r) ................................................................................................ 12
29 C.F.R. Pt. 1630 App. § 1630.2(j)(1)(ix) ................................................................. 6
42 U.S.C. § 12102(1) ......................................................................................... 5, 6, 8
42 U.S.C. § 12102(3)(A) .............................................................................................. 8
42 U.S.C. § 12102(3)(B) .............................................................................................. 8
42 U.S.C. § 12102(4)(A) .............................................................................................. 6
42 U.S.C. § 12111(3) ................................................................................................ 12
42 U.S.C. § 12111(8) ................................................................................................ 11
42 U.S.C. § 12112(a) .................................................................................................. 3
42 U.S.C. § 12112(b)(5) ............................................................................................ 17
42 U.S.C. § 12112(d)(4) ...................................................................................... 10, 17
42 U.S.C. § 12112(d)(4)(A) ....................................................................................... 10
42 U.S.C. § 1981a(b)(1) ............................................................................................ 20
C.F.R. Pt. 1630 App. § 1630.14(c) ...................................................................... 10, 14

Defendant Union Pacific Railroad Company, in accordance with Fed. R. Civ. P. 56 and Local Rule CV-7(C), moves for summary judgment on Plaintiff Joseph Carrillo's remaining claim of disparate treatment in violation of the Americans with Disabilities Act (ADA) (Count I).[1] In support of its motion, Union Pacific states as follows:

**INTRODUCTION**[2]

Joseph Carrillo last performed work for Union Pacific Railroad Company in 2017 as a Diesel Electrician—a safety-critical position. Carrillo was responsible for inspecting locomotive electrical systems and components, troubleshooting malfunctions, and performing maintenance and repair on locomotives at Union Pacific's diesel shop located in El Paso, Texas. As a Diesel Electrician at the El Paso shop, Carrillo frequently operated company vehicles and worked on or around moving locomotives—and was responsible for moving locomotives throughout the shop yards on a regular basis. Carrillo's ability to safely perform his duties was paramount to providing safe rail travel for not only Union Pacific employees, but also the public. The sudden incapacitation of a safety-critical worker like Carrillo could lead to harm to himself, other employees, members of the public, property, and the environment; including accidents that cause explosion, fire or release of hazardous material.

On the morning of June 28, 2017, Carrillo lost consciousness at home while getting ready for work, and was found unconscious and shaking on the floor by his girlfriend—who informed Carrillo's supervisor, Brett Thomason, that he would not be at work that day. When Carrillo

---

[1] Carrillo's claims for disparate-impact based on unlawful screening (Count II) and failure to accommodate (Count III) were dismissed by the Court on July 16, 2021. *See* Doc. 27.

[2] Appendix A contains Union Pacific's Statement of Undisputed Material Facts Supporting Summary Judgment—which is attached hereto as if fully incorporated herein—provides pinpoint citations to the supporting record. *See* Local Rule CV-7(d)(1). Such references will be cited as "SOF ¶."

1

returned to work a few days later, he told Thomason that he had collapsed and may have had a seizure; and tried to show Thomason where he bit his tongue. Thomason immediately contacted his manager, Daniel Glenn, to report Carrillo's loss of consciousness and possible seizure out of concern for the safety of Carrillo and others working around him. Because Carrillo reported losing consciousness and possibly suffering a seizure, he was required under Union Pacific's Medical Rules to undergo a fitness-for-duty (FFD) evaluation before he could be cleared to return to work. Union Pacific's Health and Medical Services (HMS) department needed to determine whether Carrillo could safely perform the essential functions of his safety-critical job.

In performing its fitness-for-duty evaluation, Union Pacific relied on the Federal Motor Carrier Safety Administration's (FMCSA) guidance and recommendations, which provided that when a commercial driver suffered a sudden and unprovoked seizure, the driver be removed from service for a period of five years due to the significantly increased risk for future seizures in that time period. In this case, HMS conducted an individualized assessment of Carrillo's medical records, consulted with a board-certified neurologist, and relied on the FMCSA's recommendations when it issued Carrillo restrictions for a period of five years that prohibited him from: (1) operating company vehicles, on-track or mobile equipment, or fork-lifts; (2) working on or near moving trains, freight cars or locomotives, unless protected by barriers; (3) operating cranes, hoists or other machinery; (4)  working at unprotected heights; and (5) performing work where his decisions or actions could affect the safety of others. Union Pacific was entitled to trust its medical professionals' risk assessment. It was not required to wait and see whether Carrillo would someday be incapacitated while repairing or operating a locomotive.

Carrillo now contends that Union Pacific discriminated against him in violation of the Americans with Disabilities Act (ADA) because of his disability. Because Carrillo cannot meet

his burden of establishing a *prima facie* case supporting this claim or that Union Pacific acted with discriminatory intent, Union Pacific is entitled to judgment as a matter of law and the Court should grant summary judgment in its favor.

**ARGUMENT AND AUTHORITIES**[3]

## I.     Union Pacific is entitled to summary judgment on Carrillo's disparate-treatment claim (Count I).

The ADA prohibits "discrimination against a qualified individual on the basis of disability in regard to job application, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff can prove intentional discrimination under the ADA by presenting "direct evidence that [he] was discriminated against because of [his] disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792, 802 (1973)]." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 579 (5th Cir. 2020) (brackets in original and quotation omitted). Here, Carrillo cannot meet his burden under either evidentiary framework.

### A.     A fitness-for-duty determination is not direct evidence of disability discrimination.

"[D]irect evidence is rare." *Clark*, 952 F.3d at 579 (alternation in original and quotation omitted). In the Fifth Circuit, direct evidence in an ADA discrimination case is evidence that, "if believed, it proves the fact of 'discriminatory animus without inference or presumption.'" *Kitchen v. BASF*, 952 F.3d 247, 252 (5th Cir. 2020) (quoting *Rodriguez v. Eli Lily & Co.*, 820 F.3d 759, 765 (5th Cir. 2016)). "If an inference is required for the evidence to be probative as to [defendant's]

---

[3] Union Pacific incorporates the summary judgment standard stated by this Court in *Fuentes v. Union Pacific Railroad*, No. EP-16-CV-00501-FM, 2017 WL 10774803, at *3 (W.D. Tex. Sept. 29, 2017) (granting summary judgment in Union Pacific's favor on age discrimination claim).

discriminatory animus …, the evidence is circumstantial, not direct." *Kittilsen v. Gen. Supply &
Servs., Inc.*, No. 3:18-CV-00931-E, 2020 WL 4904488, at \*6 (N.D. Tex. Aug. 19, 2020); *see also,
e.g., Nall v. BNSF Ry. Co.*, 917 F.3d 335, 341 (5th Cir. 2019).

Here, Carrillo was not returned to service from his medical leave of absence after Andreas
Mader, the Director of Mechanical Support overseeing the El Paso diesel shop, reviewed
functional work restrictions issued by Dr. Holland as part of the fitness-for-duty determination and
concluded that there were no reasonable accommodations allowing Carrillo to safely perform the
essential functions of his job. [SOF ¶¶ 90-105]. Concluding that Carrillo could not safely perform
the essential functions of his job within functional work restrictions is not the same as refusing to
return him to work because of prejudice against his medical conditions. Indeed, an inferential leap
is required to arrive at the conclusion that Union Pacific did not return Carrillo to work out of
discriminatory animus against his medical conditions.

Thus, Carrillo cannot produce direct evidence to support his case. *See, e.g., Clark*, 952 F.3d
at 579-82 (finding no direct evidence of disability discrimination); *Kitchen v. BASF*, 952 F.3d 247,
252 (5th Cir. 2020) (no direct evidence of disability discrimination based on employee's
alcoholism where employee was discharged for failing a breath alcohol test); *Bohner v. Union Pac.
R.R. Co.*, No. 4:19-cv-02581-SEP, 2021 WL 3363063, at \*4 (E.D. Mo. Aug. 3, 2021) (no direct
evidence of disability discrimination where plaintiff was referred for FFD evaluation and not
returned to work after being issued medical restrictions); *Jackson v. Union Pac. R.R. Co.*, No.
4:19-cv-00069-RGE-RAW, 2021 WL 1726895, at \*11 (S.D. Iowa Mar. 29, 2021) (applying
*McDonnell Douglas* where Union Pacific concluded employee was at risk for sudden
incapacitation following a stroke and issued work restrictions); *Krehbiel v. Union Pac. R.R. Co.*,
No. 19-2002-JAR, 2020 WL 5503363, at \*7-\*8 (D. Kan. Sept. 11, 2020) (applying *McDonnell

*Douglas* when employee was not returned to work after FFD evaluation because he was unable to safely perform his job).

> **B.    Carrillo cannot meet his burden of proof under the indirect evidence framework.**

To establish his *prima facie* case, Carrillo must show that (1) he is disabled within the meaning of the ADA; (2) he is qualified, with or without reasonable accommodation to perform his job's essential functions; and (3) he suffered an adverse employment action because of his disability. *Clark*, 952 F.3d at 582 (quotation omitted). If Carrillo makes a *prima facie* case, the burden shifts to Union Pacific to articulate a legitimate, nondiscriminatory reason for its actions. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Union Pacific's burden in this respect "is one of production, not proof, and involves no credibility assessments." *Harris v. Dallas Cnty. Hosp. Dist.*, No. 3:14-CV-3663-D, 2016 WL 2914847, at *10 (N.D. Tex. May 19, 2016). Once Union Pacific does so, the burden shifts back to Carrillo to show that Union Pacific's stated reasons are pretext designed to mask discrimination. *Id.*

"Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Harris*, 2016 WL 2914847 at *10 (quoting *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143 (2000)).

> 1.    Carrillo was not disabled under the ADA based on his loss of consciousness.

Carrillo claims he is "disabled within the meaning of the ADA." Doc. 1, ¶ 34. But his Complaint fails to specify what condition he claims to be disabling, and the only potential medical condition referenced therein is "a brief period of unresponsiveness." *Id*., ¶ 21. Nor does he specify whether he is proceeding under the ADA definition for actual disability, record-of disability, or

regarded-as disability. *See* Doc. 1, *passim*; 42 U.S.C. § 12102(1). Regardless, his "brief period of unresponsiveness" is not a disability under any of these standards.

### (a) *Carrillo's loss of consciousness was not an ADA disability under the actual or record-of disability prongs.*

A person is "disabled" under the ADA if they have "a physical or mental impairment that substantially limits one or more major life activities." *Clark v. Boyd Tunica, Inc*., No. 3:14-CV-00204-MPM-JMV, 2016 WL 853529, at *3 (N.D. Miss. March 1, 2016) (quoting 42 U.S.C. § 12102(1)(A)). Preliminarily, Carrillo's Complaint fails to state, let alone "adequately allege," a disability under the ADA. *Fabela v. Corpus Christi Indep. Sch. Dist.*, No. 2:19-CV-387, 2020 WL 2576175, at *5 (S.D. Tex. May 21, 2020) (dismissing ADA claim where plaintiff's complaint and underlying charge failed to allege disabling condition); *see* Doc. 1, *passim* Nor does he specify any major life activities in which he is substantially limited because of  his "brief period of unresponsiveness." *Id.*, ¶ 21. Accordingly, Carrillo's disparate treatment claim fails for this reason alone and should be dismissed.

Regardless, a physical impairment is "[a]ny physiological disorder or condition … affecting one or more body systems, such as neurological[.]" 29 C.F.R. § 1630.2(h)(1). An impairment is substantially limiting if it "substantially limits the ability of a person to perform a major life activity as compared to most people in the general population." *Id.* at § 1630.2(j)(1)(ii). Under the ADAAA, whether a person has a disability is construed broadly and EEOC regulations provide that the term "substantially limits" is to be construed broadly and "is not meant to be a demanding standard." *Clark,* 2016 WL 853529, at *3-4 (citing 42 U.S.C. § 12102(4)(A); 29 C.F.R. § 1630.2(j)(1)(ii)). That said, "not every impairment … constitute[s] a disability." 29 C.F.R. § 1630.2(j)(1)(ii).

The "duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity." 29 C.F.R. Pt. 1630 App. § 1630.2(j)(1)(ix). Although "an impairment does not have to last for more than six months in order to be considered substantially limiting" under the actual disability prong, "[i]mpairments that last only for a short period of time are typically not covered, although they *may* be covered if sufficiently severe." *Id.* (emphasis added); *see also Willis v. Noble Envtl. Power, LLC*, 143 F. Supp. 3d 475, 481 (N.D. Tex. 2015) (considering three factors, including "the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or the expected permanent or long term impact of, or resulting from, the impairment.").

In *Jackson v. Union Pac. R.R. Co*, the court concluded the employee failed to show he was actually disabled because his "stroke-related deficits" did not constitute physical impairments and there was no evidence that employee's stroke "left him with permanent or long-lasting physical or mental deficits." 2021 WL 1726895, at *13. There, after employee's stroke, "he experienced stroke-related deficits, including slurred speech, weakness, and difficulty with oculomotor control." *Id.* But within two months of the stroke, these deficits had resolved and employee was released to work without restrictions at his own request and with his medical providers' approval. *Id.* at *13-*14. Moreover, employee failed to show that any of his stroke-related deficits substantially limited his major life activities—especially given his willingness to return to work despite the deficits. *Id.* at *14. Thus, the employee was not actually disabled. *Id.* at *13-*14.

Here, like the employee in *Jackson*, Carrillo's loss of consciousness was of short duration. He first told his doctor that he was unconscious for 5 minutes and now claims he was only unconscious for 25-30 seconds, with a residual headache that lasted "a couple days." [SOF ¶¶ 43-44, 51, 117]. Carrillo's primary care provider, Dr. Saenz, cleared him to return to work without

restrictions at his request just days after his loss of consciousness and almost immediately after he was removed from service. [SOF ¶¶ 42-47]. Carrillo also testified his loss of consciousness did not substantially limit any major life activity. [SOF ¶¶ 116-119]. Thus, Carrillo's loss of consciousness was not an actual disability under the ADA.[4] *See, e.g., Clark*, 2016 WL 853529, at *4-5 (employee with fractured ankle who could not walk for 4 months was not disabled under the ADA) (collecting cases); *Randall v. United Petroleum Transports, Inc.*, 131 F. Supp. 3d 566, 572, (W.D. La. 2015) (employee whose impairment prevented him from driving for 6 months was not disabled under the ADA).

### (b) Carrillo was not regarded-as disabled based on his loss of consciousness.

Carrillo also fails to present any evidence that Union Pacific regarded him as disabled. An individual is regarded-as disabled if he is regarded as having a physical impairment. 42 U.S.C. § 12102(1)(C); *Burns v. Nielson*, 456 F.Supp.3d 807, 826 (W.D. Tex. 2020). The actual or perceived physical impairment need not limit, or be perceived to limit, a major life activity. 42 U.S.C. § 12102(3)(A); *Burns*, 456 F.Supp.3d at 826.

"[T]he regarded as" prong "does not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." *Austgen v. Allied Barton Security Svcs*., No. H-18-0949, 2019 WL 3436514, at *4 (W.D. Tex. July 30, 2019) (citing 42 U.S.C. § 12102(3)(B)). Thus, "for a plaintiff alleging disability discrimination

---

[4] An individual has a record-of disability if there is a record of a physical impairment that substantially limits a major life activity. 42 U.S.C. § 12102(1)(B). Under the ADA's structure, the record-of prong is intended for past impairments. *See* 29 C.F.R. Pt. 1630 App. § 1630.2(k) (the record-of prong "is to ensure that people are not discriminated against because of a history of disability"). Otherwise, applying the record-of prong to a present impairment makes it duplicative of an actual disability under 42 U.S.C. § 12102(1)(A). For the same reasons that Carrillo's loss of consciousness was not an actual disability, there was no record that the loss of consciousness was a physical impairment that substantially limited a major life activity. Thus, it was not disabling under the record-of prong.

to show that the employer regarded him as having an impairment, the plaintiff must show that (1) he has an actual or perceived impairment, (2) that impairment is neither transitory nor minor, and (3) the employer was aware of and therefore perceived the impairment at the time of the alleged discriminatory action." *See Adair v. City of Muskogee*, 823 F.3d 1927, 1306 (10th Cir. 2016).[5] The regarded-as prong "is intended to combat the effects of archaic attitudes, erroneous perceptions, and myths that work to the disadvantage of persons with, or regarded as having, disabilities." *Middleton v. Ball-Foster Glass Container Co.*, 139 F. Supp. 2d 782, 792 (N.D. Tex. 2001).

An employer's reliance on a physician's findings undermines a "regarded as" claim. *See Bennett v. Calabrian Chem. Corp.*, 324 F.Supp.2d 815, 833 (E.D. Tex. 2004); *Washington v. Occidental Chem. Corp.*, 24 F.Supp.2d 713, 727 (S.D. Tex. 1998) ("An employer's deference to a physician's judgment is not evidence that the employer regarded the employee as disabled.") And employers can rely on recommendations of company doctors and independent experts when assessing whether an employee can safely perform their essential job functions. *See Pisani v. Conrad Industries, Inc.*, No. 6:17-cv-00393, 2018 WL 701531, at *2 (W.D. La. Feb. 1, 2018) ("An employer's determination that a person cannot safely perform his job functions is objectively reasonable when the employer relies upon a medical opinion that is itself objectively reasonable.") (quotation omitted). This is especially true with respect to employees holding safety-sensitive positions. *See Trevillion v. Union Pac. R.R.*, No. 18-610, 2021 WL 1762112, at *5-6 (W.D. La.

---

[5] The Fifth Circuit has not resolved "whether a plaintiff must establish as part of [their] prima-facie case that the perceived impairment was not transitory or minor, or whether an employer must prove as an affirmative defense that an impairment was transitory and minor." *Alvarado v. ValCap Grp., LLC*, No. 3:21-CV-1830-D, 2022 WL 19686, at *9 n. 12 (N.D. Tex. Jan. 3, 2022) (internal quotation omitted) (citing *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302-03 (5th Cir. 2020) (affirming summary judgment in employer's favor on ADA "regarded-as" claim.)).

9

May 4, 2021) (granting summary judgment to Union Pacific where safety-sensitive employee was placed on medical leave "in accordance with Union Pacific's FFD procedures").

Referring an employee for a fitness-for-duty exam that complies with the ADA "is insufficient to prove that an employer regards the employee as disabled." *Tanner v. BC LaPlace, LLC,* No. 17-5141, 2019 WL 1382302, at *8 (E.D. La. March 27, 2019); *see also* 42 U.S.C. § 12112(d)(4)(A). The ADA "permits employers to make inquiries or require medical examinations (fitness for duty exams) when there is a need to determine whether an employee is *still able* to perform the essential functions of his or her job." *Ketcher v. Wal-Mart Stores, Inc.*, 122 F. Supp. 2d 747, 754 (S.D. Tex. 2000) (emphasis in original) (citing C.F.R. Pt. 1630 App. § 1630.14(c)); see also *Tanner*, 2019 WL 1382302, at *5. Indeed, "an employer does not 'regard' an employee as disabled when the employer's adverse action is based on belief that the employee cannot perform the job." *Jackson*, 2021 WL 1726895, at *14; *see also Watt v. City of Crystal*, No. 14-CV-3167 (JNE/JJK), 2015 WL 7760166, at *5 (D. Minn. Dec. 2, 2015) (finding "a difference between being perceived as impaired and being perceived as unable to perform a job duty").

In *Jackson*, the plaintiff failed to present sufficient evidence suggesting Union Pacific "regarded him as disabled when it placed on him a five-year waiting period with work restrictions." 2021 WL 1726895, at *14. There, "Union Pacific had concerns about Jackson's ability to safely perform his job due to the increased risk of sudden incapacitation its doctors associated with his stroke." *Id.* "Union Pacific's decision to issue work restrictions and a five-year waiting period [did] not indicate that Union Pacific believed Jackson *had* a physical impairment." *Id.* (emphasis in original). Rather, it showed "Union Pacific believed Jackson was *at risk* of becoming physically impaired and creating a safety hazard while performing his job." *Id.* (emphasis in original). Ultimately, "[b]ecause Union Pacific believed Jackson was unqualified to perform his job duties

10

due to his risk of sudden incapacitation, Jackson cannot demonstrate Union Pacific regarded him as physically disabled when it issued work restrictions for a five-year waiting period." *Id.* at *15.

Here, Carrillo—like in *Jackson*—cannot show that Union Pacific regarded him as disabled because Union Pacific's decision to issue him functional work restrictions was reasonably based on Carrillo's medical records, the findings and recommendations of various physicians, and the FMCSA's evidence-based guidance—not unfounded myths, stereotypes or prejudices. *See Wurzel v. Whirlpool Corp.*, No. 3:09CV498, 2010 WL 1495197, at *5-7, 9-10 (N.D. Ohio Apr. 14, 2010) (plaintiff was not regarded as disabled where company issued restrictions based on the recommendations of the company's doctor and an independent cardiologist who shared concerns about his ability to safely perform the essential functions of his job).

Because Carrillo does not qualify as disabled under any prong of the ADA's disability definition, summary judgment should be granted in Union Pacific's favor.

## 2. Carrillo was not qualified under the ADA because he could not safely perform the essential functions of his job.

Carrillo's ADA disparate-treatment claim also fails because he was not qualified to perform the essential functions of his job. A "qualified individual" is one "who, with or without, reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m); *see also* 42 U.S.C. § 12111(8); *Harris*, 2016 WL 2914847, at *5; *Gober v. Frankel Family Trust*, 537 Fed. Appx. 518, 521 (5th Cir. 2013). "The term *essential function* means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1) (emphasis in original). "If the disabled person must be exempted from performance of an essential function of the job, then [ ]he is not otherwise qualified and not protected by the ADA." *Jones v. Kerrville State Hosp.*, 142 F.3d 263, 265 (5th Cir. 1998).

To determine whether a job function is essential, courts "look to several factors, such as the 'employer's judgment as to which functions are essential' and 'the consequences of not requiring the incumbent to perform the function.'" *Weber v. BNSF Ry. Co.*, 989 F.3d 320, 325 (5th Cir. 2021) (quoting 29 C.F.R. § 1630.2(n)(3)(i)-(vii)). "It is true that among the factors listed in 29 C.F.R. § 1630.2(n)(3), courts should give *the greatest weight* to an employer's judgment on essential functions of a job." *Garcia v. City of Amarillo, TX*, No. 2:18-CV-95-Z-BR, 2020 WL 4208060, at *9 (N.D. Tex. July 22, 2020) (emphasis added) (citing *Credeur v. La. Through Office of Atty. Gen.*, 860 F.3d 785, 792 (5th Cir. 2017)). Indeed, "the inquiry into essential functions is not intended to second guess an employer's business judgment …" *Credeur*, 860 F.3d at 792.

The Fifth Circuit has declined to address which party bears the burden of proof regarding the direct threat defense when employee's essential job functions implicate the safety of others, and other Circuits are split on the issue. *E.E.O.C. v. Steel Painters, LLC*, 433 F.Supp.3d 989, 1003 (5th Cir. 2020) (collecting cases). Regardless, the diesel electrician position was a safety-sensitive position—and Carrillo agrees. [SOF ¶ 8-9]. Thus, Carrillo was not qualified if, in holding the diesel electrician position, he posed a direct threat to the health and safety of himself or others. *Steel Painters, LLC*, 433 F.Supp.3d at 1002 (quoting 42 U.S.C. § 12111(3)). A direct threat is "a significant risk to health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). It also includes a significant risk of harm to the employee themselves. 29 C.F.R. § 1630.2(r). "When an employer relies on a medical evaluation to conclude that employee poses a direct threat, the Fifth Circuit has held that 'the question is whether [the employer] reasonably concluded [the employee] posed a direct threat via an individualized assessment that relied on the best available objective evidence.'" *Sutherland v. Edison Chouest Offshore, Inc.*, No. 19-414, 2020 WL 5436654, at *7 (E.D. La. Sept. 10, 2020) (citing *Nall*, 917

12

F.3d at 344); *see also* 29 C.F.R. § 1630.2(r). Factors considered are: (1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that the potential harm will occur; and (4) the imminence of the potential harm. 29 C.F.R. § 1630.2(r).

Here, Union Pacific conducted an individualized assessment of Carrillo by relying on the evaluations of Drs. Charbonneau, Frankel, and Holland; and facts contained in Carrillo's specific medical records. It did not categorically issue restrictions, and, instead, considered Carrillo's individual medical condition. [SOF ¶¶ 15, 37, 42-78]. As to the duration of the risk, Union Pacific determined that Carrillo needed five-years of sudden incapacitation work restrictions after its doctors and Dr. Frankel concluded Carrillo's' loss of consciousness was the likely result of a sudden, unprovoked seizure; and Carrillo's resulting risk for future seizures. [SOF ¶¶ 79-89]. As to the nature and severity of the potential harm, Union Pacific considered the safety-critical nature of Carrillo's job duties, which included maintaining and repairing locomotives—and moving locomotives—and determined his risk of sudden incapacitation on the job posed a serious safety risk. [SOF ¶¶ 79-92].

As to the likelihood and imminence of the harm, Union Pacific relied on current medical knowledge and FMCSA guidance; and concluded that Carrillo's loss of consciousness was likely the result of a sudden, unprovoked seizure and, thus, was at significantly increased risk of suffering another seizure within the first five years following his loss of consciousness. [SOF ¶¶ 86-87, 89-92106-112]. This posed a significant, imminent risk of substantial harm given Carrillo's safety-critical job. Consequently, Union Pacific's decision to issue Carrillo functional work restrictions was objectively reasonable. *See, e.g., Krehbiel*, 2020 WL 55503363, at *9-*11 (Union Pacific's determination that plaintiff was a direct threat was objectively reasonable); *Witchet v. Union Pac. R.R. Co.*, No. 8:18CV187, 2020 WL 12762513, at *9 (D. Neb. Feb. 21, 2020) (granting summary

judgment to Union Pacific after it imposed a five-year waiting period following plaintiff's cortical stroke in accordance with FMCSA guidelines); *Jackson*, 2021 WL 1726895, at *19 (granting summary judgment to Union Pacific after it imposed a five-year waiting period because of the increased risk of seizure associated with the plaintiff's intracerebral hemorrhage).

Union Pacific anticipates Carrillo will argue its FFD determination was not objectively reasonable because he disputes that his loss of consciousness was the result of a seizure. "But, the employer's conclusion does not have to be correct to satisfy the objective reasonableness standard." *Sutherland*, 2020 WL 5436654, at *9 (citing *Nall*, 917 F.3d at 346 n. 8). "[T]he question is not whether the employer was correct about the risk the employee posed, but instead concerns whether the employer's decision was objectively reasonable based upon the information before it." *Goode v. BNSF Ry., Inc.*, No 18-319, 2020 WL 1527864, at *6 (N.D. Tex. March 20, 2020) (citing *Nall*, 917 F.3d at 346 n. 8). Even Carrillo's expert neurologist, Dr. Devereaux, testified Union Pacific's FFD determination was "reasonable" based upon the information available to it at the time. [SOF ¶ 114].[6]

### 3. Carrillo did not suffer an adverse employment action because of a disability.

The ADA expressly "permits employers to make inquiries or require medical examinations (fitness for duty exams) when there is a need to determine whether an employee is still able to perform the essential functions of his or her job." 29 C.F.R. Pt. 1630 App. § 1630.14(c); *see also Hinojosa v. Jostens Inc.*, 128 Fed. Appx. 364, 368 (5th Cir. 2005). Moreover, removing an employee from service to undergo a valid medical evaluation is not an adverse employment action. *Trevillion*, 2021 WL 1762112, at *5. In *Trevillion v. Union Pac. R.R.*, the plaintiff—a safety-

---

[6] Indeed, as of December 2017, Carrillo was still under activity restrictions from his neurologist— including that he not drive or engage in other safety-sensitive activities—and had been referred by his neurologist to the Mayo Clinic for additional evaluation. [SOF ¶ 63-64, 68-71, 111].

sensitive employee like Carrillo—was removed from service "because of his supervisor's concern that he had developed a medical problem that elevated his risk for on-the-job incapacitation." *Id*. Despite claiming he was "wrongfully put out of service, the court disagreed and found this was not an adverse employment action under the ADA. *Id*.

Similarly, the ADA allows employers to lawfully consider physician-imposed medical restrictions and whether an applicant or employee can perform the essential functions of the position within those restrictions. *See, e.g.,* 29 C.F.R. § 1630.14(c); *Sanchez v. City of San Antonio*, 794 Fed. Appx. 444, 445 (5th Cir. 2020) (employee was not qualified individual where doctor's report stated employee was unable to return to work by the date of his employment termination); *Stern v. St. Anthony's Health Ctr.,* 788 F.3d 276, 294 (7th Cir. 2015) (citation omitted); *Coleman v. Penn. State Police,* 561 Fed. Appx. 138, 145 n.13 (3d Cir. 2014) (employer entitled to trust its own physician's risk assessment over that provided by employee's treating physician).

Identical to *Trevillion*, here, Union Pacific removed Carrillo from service and conducted an FFD evaluation in accordance with its Medical Rules because Carrillo's loss of consciousness and potential seizure posed an unacceptable safety risk to himself and others. [SOF ¶¶ 35-91]. As discussed above, Union Pacific then conducted an objective, individualized assessment and determined it was appropriate to issue Carrillo functional work restrictions. [SOF ¶¶ 90-92]. Carrillo could not perform the essential functions of his job within those restrictions, and, thus, was not returned to service. [SOF ¶¶ 93-105]. These are not adverse employment actions under the ADA and, thus, summary judgment should be granted in Union Pacific's favor.

    4.   <u>Regardless, Union Pacific had a legitimate, non-discriminatory reasons for its actions and Carrillo cannot prove pretext for discriminatory intent.</u>

Demonstrating that Union Pacific regarded Carrillo as disabled "does not, by itself, establish liability;" rather, Carrillo must prove discrimination on the basis of disability to succeed

on his disparate-treatment claim. 29 C.F.R. § 1630.2(l)(3). In other words, he must prove Union Pacific's discriminatory intent, i.e., pretext designed to mask discrimination. *See, e.g., Raytheon Co. v. Hernandez*, 540 U.S. 44, 52-55 (2003); *Mosley v. Bexar Cnty.*, No. SA-17-CV-00583-XR, 2020 WL 589540, at *16 (W.D. Tex. Feb. 5, 2020) (plaintiff alleging disparate treatment under the ADA must "show that the [defendant] had a discriminatory intent or motive for its action.") (internal quotation omitted) (alteration in original). "In order to establish pretext, Plaintiff must show that Defendant's proffered reason 'is false or unworthy of credence.'" *Sulcer v. Louisiana*, No. 17-167-RLB, 2019 WL 1573701, at *6 (M.D. La. Apr. 10, 2019) (quoting *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011)). A plaintiff's "subjective beliefs" of alleged discriminatory intent cannot create a genuine fact dispute regarding pretext. *Best v. UTI Logistics*, No. G:06-0300, 2008 WL 62210, at *4 (S.D. Tex. Jan. 3, 2008). "Courts are not permitted to second guess an employer's business decision when conducting pretext analysis." *Wilson v. L&B Realty Advisors, LLP*, No. 3:20-CV-2059-G, 2022 WL 102564, at *14 (N.D. Tex. Jan. 11, 2022).

Here, Drs. Charbonneau and Holland conducted an FFD evaluation that included an individualized review of Carrillo's medical records. [SOF ¶¶ 37-91]. Dr. Holland relied on FMCSA guidance and the opinion of a board-certified neurologist in concluding that Carrillo's loss of consciousness was likely the result of a sudden, unprovoked seizure—creating an unacceptable risk of sudden incapacitation due to an increased risk of future seizures. [SOF ¶¶ 89-92, 106-111]. Accordingly, and because Carrillo was a safety-sensitive employee, Dr. Holland applied functional work restrictions for a period of five years. [SOF ¶¶ 89-92]. Relying on these restrictions, Mader then concluded that Carrillo could not safely perform the essential functions of his job as a Diesel Electrician and that there were no reasonable accommodations allowing him to

do so. [SOF ¶¶ 93, 95]. Relying on a medical assessment demonstrating that Carrillo could not perform his essential job functions was a legitimate, nondiscriminatory reason for not returning him to service. *See Sutherland*, 2020 WL 5436654, at *11 ("[E]ven if the absence of a diagnosis … created an issue of fact as to the applicability of a direct threat defense, defendants' documented concerns over plaintiff's ability to perform his job safely are a legitimate, nondiscriminatory reason for the allegedly adverse employment action."). And Carrillo presents no evidence demonstrating that this good-faith reliance was pretext for intentional discrimination.

All Carrillo can prove is that Union Pacific relied on its doctors' medical judgments about his condition, but this doesn't demonstrate discriminatory intent. Under the ADA, unlike other employment discrimination laws, an employee's medical condition may be relevant to job qualifications in a way that the employee's race, sex, or national origin almost never are. Thus, the ADA expressly allows employers to conduct job-related medical examinations and inquiries. *See* 42 U.S.C. § 12112(d)(4); *see, e.g.*, *Ketcher*, 122 F. Supp. 2d at 754 (citing C.F.R. Pt. 1630 App. § 1630.14(c)); *Trevillion*, 2021 WL 1762112, at *5. It allows employers to lawfully consider physician-imposed medical restrictions and whether an applicant or employee can perform the essential functions of the position within those restrictions. *See, e.g.,* 29 C.F.R. § 1630.14(c). It also requires employers to evaluate whether a medical restriction implicates an essential job function, and, if so, whether a reasonable accommodation would allow the applicant or employee to perform the essential function. *See* 42 U.S.C. § 12112(b)(5).

It is not necessary for Union Pacific to establish that it was right or correct in relying on its doctors' medical judgments—only that it believed them in good faith. *See, e.g., Goode*, 2020 WL 1527864 at *6 (citation omitted); *Easterling v. Tensas Parish Sch. Bd.*, No. 14-0473, 2016 WL 1452435, at *3 (W.D. La. April 13, 2016) ("Decisions that are unwise or incorrect will not

17

demonstrate pretext"); *LeMaire v. La.*, 480 F.3d 383, 391 (5th Cir. 2007) ("Our anti-discrimination laws do not require an employer to make proper decisions, only nondiscriminatory ones.")).

Carrillo is required to prove discriminatory intent. He is unable to offer any evidence doing so. Thus, the Court should grant summary judgment in Union Pacific's favor. *See, e.g., Krehbiel*, 2020 WL 5503363, at *11 (finding no evidence of pretext where plaintiff was not returned to service as a result of work restrictions issued during the FFD determination); *Bohner*, 2021 WL 3363063, at *6 (same); *Jackson*, 2021 WL 1726895, at *17.

## II.   Carrillo is not entitled to front pay.

Like back pay, front pay under the ADA is an equitable remedy "left to the discretion of the court." *Miles-Hickman*, 613 F.Supp.2d at 890 (citation omitted). "The purpose of front pay is to compensate the plaintiff for future lost wages and benefits." *Id*. In the Fifth Circuit, an unconditional offer of reinstatement precludes a later order of front pay and tolls an employer's back-pay liability. *Lewis Grocer Co. v. Holloway,* 874 F.2d 1008, 1012 (5th Cir. 1989). Indeed, a plaintiff's entitlement to front pay "is terminated upon an unreasonable refusal of an offer of reinstatement." *Forrest v. Dynamic Security Corp*., No. CIV.A. 00-3423, 2002 WL 1204917, at *14 (E.D. La. May 2, 2002) (citing *Lewis Grocer*, 874 F.2d at 1012).

On April 7, 2022, Union Pacific sent Carrillo a letter indicating that, because his 5-year restriction period is scheduled to end in June 2022, he can begin the fitness-for-duty process to be medically cleared to return to work. [SOF ¶ 120]. Unconditional offers of reinstatement can be subject to routine medical exams. *See, e.g., Clark v. Frank*, 920 F.2d 1146, 1151 (2d Cir. 1992) (affirming that offer of reinstatement, qualified by "the Postal Service's standard prerequisites that [plaintiff] pass a driver's test and physical examination," was unconditional); *Morvay v. Mahhielse Tool & Die Co.*, 708 F.2d 229, 232 (6th Cir. 1983) (unconditional offer was reasonable where employer required plaintiff to undergo psychiatric evaluation "[g]iven … the company's

unquestionable interest in maintaining a harmonious and efficient work environment"). In *Morris v. American National Can Corp.*, the Eighth Circuit held that an offer of reemployment was unconditional even though the employer required the plaintiff "to transmit medical records and to take a physical examination before returning to work." 952 F.2d 200, 202 (8th Cir. 1991). As such, Carrillo is precluded from recovering front pay.

### III.    Union Pacific is entitled to summary judgment on Carrillo's punitive damages claim.

Punitive damages are disfavored and "are to be allowed only with caution and within narrow limits." *Lee v. Southern Homes Sites Corp*., 429 F.2d 290, 294 (5th Cir. 1970). "A claimant asserting a private cause of action for violations of the ADA [] may only recover punitive damages upon a showing of intentional discrimination… if she can show that [Defendant] acted with malice or with reckless indifference to her federally protected rights." *Rizzo v. Blues Mgmt., Inc.,* No. 4:16-cv-01017, 2017 WL 549016, at *4 (S.D. Texas, January 24, 2017) (quoting 42 U.S.C. § 1981a(b)(1)); *Williams v. Trader Pub. Co*., 218 F.3d 481, 487-88 (5th Cir. 2000).

This heightened standard mirrors that stated by the U.S. Supreme Court in *Kolstad v. American Dental Ass'n*, wherein the Court sought "to resolve a conflict among the Federal Courts of Appeals concerning the circumstances under which a jury may consider a request for punitive damages" in Title VII cases. 527 U.S. 526, 533 (1999). The *Kolstad* Court found employers may be liable for punitive damages only when it is shown they acted with "malice or reckless indifference to the plaintiff's federally protected rights." *Id*. at 535 (quoting §1981a(b)(1)). When discussing this more demanding standard, the Court stated "Congress plainly sought to impose two standards of liability—one for establishing a right to compensatory damages and *another, higher* standard that a plaintiff must satisfy to qualify for a punitive award." *Id*. at 534 (emphasis added). Thus, a plaintiff must prove their employer engaged in intentional discrimination *and* that they did

so with malice or "in the face of" a perceived risk that its actions would violate federal law in order to justify a punitive damages award. *Id.* at 536. "There will be circumstances where intentional discrimination does not give rise to punitive damages liability under this standard." *Id.* at 536-37.

Carrillo has presented no facts to suggest that Union Pacific intentionally discriminated against him with malice or reckless disregard to his rights. Carrillo, a safety-sensitive employee, was removed from service after reporting he may have suffered a seizure, and was required to undergo an FFD evaluation in accordance with Union Pacific's Medical Rules. [SOF ¶¶ 8, 35-37, 48-49]. Ultimately, Union Pacific relied on the medical assessment of its doctors and a board-certified neurologist in determining that Carrillo's loss of consciousness was likely the result of a sudden, unprovoked seizure. [SOF ¶¶ 66-68, 70-72, 79-92]. Guided by the FMSCA's recommendations, Union Pacific then determined Carrillo could not safely perform the essential job functions of a Diesel Electrician—all of which is permissible under the ADA.[7] [SOF ¶¶ 85-86, 89, 92, 94].

Because none of the above amounts to "malice or reckless indifference" towards Carrillo's rights, Union Pacific is entitled to summary judgment on the issue of punitive damages. *Tingle*, 2017 WL 2335646, at *4.

## CONCLUSION

For the foregoing reasons, the Court should grant Union Pacific summary judgment on Carrillo's remaining disparate-treatment claim under the ADA.

---

[7] Union Pacific's lack of "malice or reckless indifference" is further demonstrated by the fact that Carrillo was returned to service in 2015 *and* 2017 following 2 separate months-long medical leave(s) of absence for elbow surgeries. [SOF ¶¶ 11-12].

Respectfully submitted April 22, 2022.

CONSTANGY, BROOKS, SMITH & PROPHETE LLP

*/s/ Lara C. de Leon*
Lara C. de Leon (TX #24006957)
1100 NW Loop 410, Suite 700
San Antonio, TX 78213
Telephone: 512.382.8800
ldeleon@constangy.com

Robert L. Ortbals, Jr. (MO Bar #56540)*
Katie M. Rhoten (MO Bar #69287)*
680 Craig Rd., Ste. 400
St. Louis, MO 63141
Telephone: (314) 338-3740
Facsimile: (314) 665-1707
rortbals@constangy.com
krhoten@constangy.com

**Attorneys for Defendant Union Pacific Railroad Company**

* Admitted *Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

I certify that on the 22nd day of April, 2022 the foregoing was filed electronically with the Court, which served all counsel of record using its ECF notification system.

*/s/ Lara C. de Leon*
Attorney for Defendant