# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

Joseph Carrillo,

               Plaintiff,

vs.

Union Pacific Railroad Co.,

               Defendant.

Case No. 3:21-cv-00026-FM

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 3

  I.     CARRILLO HAS DIRECT EVIDENCE OF DISCRIMINATION ............................. 3

  II.    CARRILLO IS DISABLED UNDER THE ADA .......................................... 5

      a.  Union Pacific regarded Carrillo as disabled.................................... 5

      b.  Defendant's "reliance" on medical opinions is immaterial................................ 8

  III.   CARRILLO IS QUALIFIED ......................................................... 10

      a.  Carrillo's managers agree that he could perform the essential functions of the Diesel Electrician position ............................................................. 10

      b.  Fact issues preclude summary on the direct threat defense ........................... 11

        i.   There is no significant risk of substantial harm.......................... 12

        ii.  Defendant's decision is not based an individual assessment of Carrillo's present ability to perform his job........................................................ 14

        iii.  Defendant's decision is not objectively reasonable relying on the best available medical evidence......................................................... 16

  IV.   FRONT PAY ................................................................. 18

  V.    PUNITIVE DAMAGES ....................................................... 19

CONCLUSION.......................................................................................... 20

# TABLE OF AUTHORTIES

**Cases**

*Baker v Union Pac. R.R. Co.,* No. 8:20-cv-315, 2022 WL 159283 (D. Neb. Jan. 18, 2022)……..1

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, (9th Cir. 2007) ................................................... 3

*Bennett v. Calabrian Chemicals Corp.*, 324 F. Supp. 2d 815 (E.D. Tex. 2004) ........................... 8

*Bragdon v. Abbott*, 524 U.S. 624 (1998) ............................................................... 11, 17

*Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222 (5th Cir. 2015)........................................ 6

*Campbell v. Union Pac. R.R. Co.*, No. 4:18-CV-00522-BLW, 2020 WL 5300734 (D. Idaho Sept.
  4, 2020)................................................................................................................................ 1, 20

*Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73 (2002) ............................................................. 12

*Clark v. Frank*, 920 F.2d 1146 (2d Cir. 1992) ............................................................................ 18

*Coning Glass Works v Brennan*, 417 US 188 (1974) .................................................................. 12

*Dube v. Tex. Health & Human Servs*, No. SA-11-CV-354-XR, 2011 WL 4017959 (W.D. Tex.
  Sept. 8, 2011) .......................................................................................................................... 6

*E.E.O.C. v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724 (5th Cir. 2007). ..................... 5, 11, 12

*E.E.O.C. v. Western Distributing Company*, 322 F.Supp.3d 1100 (D. Colo. 2018)..................... 19

*Equal Employment Opportunity Comm'n v. Amsted Rail Co., Inc.*, 280 F. Supp. 3d 1141 (S.D. Ill.
  2017) ........................................................................................................................................ 7

*Fulbright v. Union Pac. R.R. Co.*, No. 3:20-CV-2392-BK, 2022 WL 975603 (N.D. Tex. Mar. 31,
  2022)............................................................................................................................. 1, 5, 10

*Hopman v. Union Pac. R.R.*, 462 F. Supp. 3d 913 ....................................................................... 1

*Houser v. Castle Montessori Sch., Inc.*, No. 4:18-CV-00241, 2019 WL 2945904  (E.D. Tex. May
  2, 2019) ............................................................................................................................ 18, 19

*Jackson v. Union Pac. R.R. Co.,* No. 4:19-cv-00069-RGE-RAW, 2021 WL 1726895  (S.D. Iowa Mar. 29, 2021)...................................................................................................... 9

*Kemp v. Holder,* 610 F.3d 231 (5th Cir. 2010). ............................................................. 5

*Kolstad v. American Dental Ass'n,* 527 U.S. 526 (1999) ....................................... 19, 20

*Mahoney v. Ernst & Young LLP,* 487 F. Supp. 2d 780 (S.D. Tex. 2006).................................... 18

*Martin v. Union Pac. R.R. Co.*, No. 16-cv-2821, 2018 WL 2688881 (D. Colo. June 5, 2018)...... 1

*McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447 (5th Cir. 2019)....... 3

*Mesa v. City of San Antonio by & through City Pub. Serv. Bd.*, No. SA-17-CV-654-XR, 2018 WL 3946549, (W.D. Tex. Aug. 16, 2018) ............................................................ 6

*Mlsna v. Union Pac. R.R. Co.*, 3:18-cv-00037 (W.D. Wis. July 2, 2021).................................. 1, 20

*Mlsna v. Union Pac. R.R. Co.*, 975 F.3d 629 (7th Cir. 2020)......................................................... 1

*Montgomery v. Union Pac. R.R. Co.*, No. CV-17-00201-TUC-RM, 2018 WL 6110930 (D. Ariz. Nov. 21, 2018) ...................................................................................................... 1

*Nall v. BNSF Ry. Co.*, 917 F.3d 335, 341 (5th Cir. 2019) ..................................................... passim

*Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242 (5th Cir. 2013). ................................................ 5

No. 418CV00241ALMKPJ, 2019 WL 2295443 (E.D. Tex. May 30, 2019)............................... 19

*Pegram v. Honeywell, Inc.*, 361 F.3d 272 (5th Cir. 2004)............................................................. 4

*Pisani v. Conrad Industries, Inc*., No. 6:17-cv-00393, 2018 WL 701531 (W.D. La. Feb. 1, 2018) ............................................................................................................................. 8

*Rizzo v Children's World Learning Centers Inc*, 213 F 3d. (5th Cir. 2000)................................. 12

*Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 294 (5th Cir. 1998) ............................................ 3

*Robson v. Union Pac. R.R. Co.*, No. 4:17-CV-00416-BLW, 2019 WL 6833661 (D. Idaho Dec. 13, 2019)............................................................................................................................. 1

iv

*Rodriguez v. ConAgra Grocery Prod. Co.*, 436 F.3d 468 (5th Cir. 2006)...................................... 3

*Royal v. CCC & R Tres Arboles, L.L.C.,* 736 F.3d 396 (5th Cir. 2013) ......................................... 4

*Sanders v. Union Pac. R.R. Co.*, No. 4:20-cv-3023, 2021 WL 4783629 (D. Neb. Oct. 7, 2021).... 1

*Thompson v. City of Waco, Texas*, 764 F.3d 500 (5th Cir. 2014).................................................. 4

*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985) ........................................................ 3

*Trevillion v. Union Pac. R.R.*, No. CV 18-610, 2021 WL 1762112  (W.D. La. May 4, 2021)...... 8

*United States Equal Emp. Opportunity Comm'n v. T&T Subsea, LLC*, 457 F. Supp. 3d 565 (E.D.

La. 2020)................................................................................................................................ 5

*Washington v. Occidental Chem. Corp.*, 24 F.Supp.2d 713 (S.D. Tex. 1998) .............................. 8

*West v. Union Pac. R.R. Co.*, No. 4:18-cv-3340, 2020 WL 1446908 (S.D. Tex. Mar. 24, 2020).... 1

*Wooten v. BNSF Railway Company*, 819 Fed. Appx. 483 (9th Cir. 2020)................................... 19

**Rules, Statues, Regulations**

42 U.S.C. § 12102(1) ................................................................................................................ 5

42 U.S.C. § 12102(1)(C)........................................................................................................... 5

29 C.F.R. § 1630.2(I)(1) ........................................................................................................ 5, 6

29 C.F.R. § 1630.2(n)(3)......................................................................................................... 10

29 C.F.R. § 1630.2(r) .............................................................................................................. 12

29 C.F.R. § Pt. 1630, App...................................................................................................... 10

29 C.F.R. pt. 1630 App. § 1630.2(l) ........................................................................................ 7

29 C.F.R. pt. 1630, App., § 1630.15(b) & (c)......................................................................... 12

42 U.S.C. § 12102(3)(A).......................................................................................................... 5

42 U.S.C. § 12111(3) .......................................................................................................... 11, 12

42 U.S.C. § 12111(8) .............................................................................................................. 10

42 U.S.C. § 12112(a) ........................................................................................................... 5

42 U.S.C. § 12112(b)(6) ..................................................................................................... 10

42 U.S.C. § 12113(b) ......................................................................................................... 11

42 U.S.C. § 12117(a) ......................................................................................................... 19

42 U.S.C. §12101(3) ........................................................................................................... 6

Fed. R. Civ. P. 12(b). ......................................................................................................... 5

## <u>INTRODUCTION</u>

Like an old record, Defendant asks this Court to dismiss Plaintiff's disability discrimination claim[1] replaying the same rationale already rejected by courts and juries alike.[2] The actual record in this case, however, demonstrates direct evidence of discrimination—namely, that Defendant removed Plaintiff from service and imposed broad, permanent work restrictions against him because of his perceived disability.

Defendant made this decision at the direction of its former Chief Medical Officer, Dr. John Holland. Dr. Holland's contemporaneous documents make clear that he believed Plaintiff suffered a single, unprovoked seizure, and because of that belief, imposed standard work restrictions against

---

[1] Defendant did not move for summary judgment on Plaintiff's disparate treatment claim under Section 12112(b)(6) in Count II. *See* Dkt. 45. Therefore, that claim is not addressed here.

[2] *See e.g.*, *Fulbright v. Union Pac. R.R. Co.*, No. 3:20-CV-2392-BK, 2022 WL 975603, at *1 (N.D. Tex. Mar. 31, 2022) (denying motion for summary judgment); *West v. Union Pac. R.R. Co.*, No. 4:18-cv-3340, 2020 WL 1446908, at *6 (S.D. Tex. Mar. 24, 2020) (same); *Campbell v. Union Pac. R.R. Co.*, No. 4:18-CV-00522-BLW, 2020 WL 5300734, at *9 (D. Idaho Sept. 4, 2020 (denying summary judgment resulting in plaintiff verdict and $1,000,000 in punitive damages); *Robson v. Union Pac. R.R. Co.*, No. 4:17-CV-00416-BLW, 2019 WL 6833661, at *6 (D. Idaho Dec. 13, 2019 (denying Union Pacific's summary judgment motion based on its direct threat defense); *Montgomery v. Union Pac. R.R. Co.*, No. CV-17-00201-TUC-RM, 2018 WL 6110930, at *7 (D. Ariz. Nov. 21, 2018) (denying summary judgment on Union Pacific's direct threat defense, noting "material issue of fact as to whether Defendant's decision was 'based on a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence.'"); *Hopman v. Union Pac. R.R.*, 462 F. Supp. 3d 913 (E.D. Ark. 2020) (denying summary judgment); *Baker v. Union Pac. R.R. Co.*, No. 8:20-cv-315, 2022 WL 159283, at *9 (D. Neb. Jan. 18, 2022) (denying summary judgment because of "material dispute on whether such an individualized assessment was performed and whether it was based on objective medical evidence related to the plaintiff's condition and abilities"); *Martin v. Union Pac. R.R. Co.*, No. 16-cv-2821, 2018 WL 2688881 (D. Colo. June 5, 2018) (denying summary judgment); *Sanders v. Union Pac. R.R. Co.*, No. 4:20-cv-3023, 2021 WL 4783629, at *9 (D. Neb. Oct. 7, 2021) (denying summary judgment on Union Pacific's direct threat defense, finding "a material dispute on whether . . . an individualized assessment was performed and whether it was based on objective medical evidence related to the plaintiff's condition and abilities."); *Mlsna v. Union Pac. R.R. Co.*, 975 F.3d 629 (7th Cir. 2020) (reversing summary judgment and remanding); *Mlsna v. Union Pac. R.R. Co.*, 3:18-cv-00037-wmc (W.D. Wis. July 2, 2021) (jury verdict rejecting Union Pacific's direct threat defense and awarding damages in the amount of $43,970,000.00).

Plaintiff. Those work restrictions prevented Plaintiff from "working on or near moving trains," performing work that required "critical decision making," and "driving a company vehicle," among other things. Dr. Holland made this decision despite not being a neurologist, and despite Plaintiff's treating doctors making no such conclusion. The objective evidence, however, demonstrates that Plaintiff did not suffer a seizure; he fainted due to illness and dehydration, a fact confirmed by Plaintiff's neurology expert, Dr. Michael Devereaux, who is the only person who took the time to speak with Plaintiff's wife, who was present during the incident.

In addition, when imposing the broad restrictions against Plaintiff, Dr. Holland relied on withdrawn medical guidance from the Federal Motor Carrier Safety Administration's ("FMCSA") Medical Examiner Handbook ("MEH"). The MEH was developed for certified medical examiners in the commercial trucking industry, not railroad workers, and, as of 2015, was no longer in use by the FMCSA. Dr. Holland knew the MEH was no longer used by the FMCSA but continued to rely on it when removing Union Pacific employees, like Plaintiff, from service.

In total, under Dr. Holland's direction, Union Pacific removed over 7,000 employees from service, effectively ending many of their railroad careers.

Despite these facts, Defendant asks this Court to dismiss Plaintiff's discrimination claim, arguing that its judgment was reasonable, and Plaintiff is unable to demonstrate that he was both perceived as disabled and qualified for his position. The overwhelming evidence demonstrates otherwise, and, as such, Defendant's motion should be denied in its entirety.

# ARGUMENT[3]

The Americans with Disabilities Act ("ADA") prohibits employment discrimination on the basis of a disability. 42 U.S.C. § 12112(a). To succeed on an ADA claim, a plaintiff must first establish a *prima facie* case by showing (1) he has a disability; (2) he is qualified for the job in question; and (3) he suffered an adverse employment decision because of his disability. *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 294 (5th Cir. 1998) (per curiam). A plaintiff can meet this burden by direct or circumstantial evidence, or both. *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 341 (5th Cir. 2019).[4] Here, the record demonstrates direct evidence that Plaintiff suffered an adverse employment decision because Union Pacific perceived that he was disabled. Plaintiff is also disabled and qualified under the ADA. As such, Defendant's motion should be denied.

## I.     CARRILLO HAS DIRECT EVIDENCE OF DISCRIMINATION

Direct evidence of discrimination proves the existence of a fact without any inferences or presumptions. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 456 (5th Cir. 2019). "Most often, direct evidence takes the form of a discriminatory statement directly connected to the plaintiff's discharge." *Id.* In a disability discrimination claim, direct evidence demonstrates that the employer took action against the employee *because of* his disability. *See Rodriguez v. ConAgra Grocery Prod. Co.*, 436 F.3d 468, 480 (5th Cir. 2006).

---

[3] Appendix A to this brief contains Plaintiff's Statement of Material Facts, which is attached hereto as if fully incorporated herein—providing pinpoint citations to the supporting record. *See* Local Rule CV-7(d)(1). References to the Statement of Facts will be cited as "Ps SOF ¶."

[4] "[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 621–22 (1985); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007) (use of burden shifting unnecessary when it is undisputed that an employer made an employment decision on a proscribed basis—in that case, disability in the form of hearing impairment).

For example, in *Rodriguez,* the Fifth Circuit found that because of the decisionmaker's admission that the plaintiff was not offered a job because of his "uncontrolled diabetes," it was "one of those rare ADA cases in which we are presented with direct (rather than circumstantial) evidence of discriminatory intent." *Id.* The Court noted that the focus of an ADA claim is with animus directed *at the disability*, and not necessarily at the plaintiff. *Id.* Thus, "it is of no moment that [the company] harbors no ill-will towards [the plaintiff] or any other diabetic individuals." *Id.* The admissions were alone sufficient to reverse the lower court's summary judgment order and "**grant Rodriguez partial summary judgment of liability on his disability discrimination claim.**" *Id.* (emphasis added).

Here, like in *Rodriquez*, there is direct evidence of discrimination. In his fitness for duty determination, Dr. Holland wrote: "In conclusion, Mr. Carrillo has had a single episode of LOC episode that was probably a single seizure of unknown cause." (Ps SOF ¶¶86-91.) "Based on UPRR's medical standards, a person with a single seizure of unknown cause is considered to have an unacceptable risk for sudden incapacitation (due to the risk for future seizures) for a minimum waiting period of five years after the event, requiring work restrictions for sudden incapacitation during this time." (*Id.*) Dr. Holland then imposed broad work restrictions that prevented Carrillo from returning to work. (*Id.* at ¶¶86-113.) Loss of employment and indefinite unpaid leave are adverse employment actions. *See Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014)*; Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004); *Royal v. CCC & R Tres Arboles, L.L.C.,* 736 F.3d 396, 400 (5th Cir. 2013).

Thus, under *Rodriquez*, there is direct evidence that Union Pacific took an adverse action against Carrillo because of his disability. *See e.g.*, *Fulbright v. UP*, 2022 WL 975603, *7 (N.D.

Tex. Mar. 31, 2022) (finding direct evidence of disability discrimination); *United States Equal Emp. Opportunity Comm'n v. T&T Subsea, LLC*, 457 F. Supp. 3d 565, 574 (E.D. La. 2020) (same).

## II.      CARRILLO IS DISABLED UNDER THE ADA[5]

"Congress intended 'that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations[ ] and ... that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis.'" *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013). The ADA defines "disability" to include: (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12112(a), § 12102(1); *Kemp v. Holder,* 610 F.3d 231, 235 (5th Cir. 2010).

### a.      Union Pacific regarded Carrillo as disabled

An individual is disabled under § 12102(1)(C)'s "regarded as" prong "if the individual is subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits or is perceived to substantially limit, a major life activity." 42 U.S.C. § 12102(3)(A); 29 C.F.R. § 1630.2(I)(1). Thus, a person may be considered disabled under the "regarded as" prong even when they have no actual impairment if they are subjected to a prohibited action because of a perceived impairment. *See id.*; *see also E.E.O.C. v. E.I. Du Pont de Nemours & Co*., 480 F.3d 724, 729 (5th Cir. 2007). Prohibited actions include, but are not limited to, "refusal to hire, demotion, placement on involuntary leave,

---

[5] Defendant contends that Plaintiff failed to adequately plead his disability claim. (Dkt. 45 at 6.) However, such a motion must be asserted before a responsive pleading is filed. *See* Fed. R. Civ. P. 12(b). Thus, Defendant's motion is untimely. (*Id.*)

termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment." 29 C.F.R. § 1630.2(I)(1).

An individual whose actual or perceived impairment is transitory, and minor does not satisfy the "regarded as" prong. 42 U.S.C. §12101(3). While the Fifth Circuit has not decided who holds the burden of proof on this issue, courts in the Western District of Texas have held that it is the employer's burden to prove that the impairment is both transitory and minor. *See Mesa v. City of San Antonio by & through City Pub. Serv. Bd.*, No. SA-17-CV-654-XR, 2018 WL 3946549, at *13 (W.D. Tex. Aug. 16, 2018); *Dube v. Tex. Health & Human Servs*, No. SA-11-CV-354-XR, 2011 WL 4017959, at *2 (W.D. Tex. Sept. 8, 2011); *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015) (finding that a plaintiff "need only show that her employer perceived her as having an impairment.").

In *Mesa*, the plaintiff filed claims for disability discrimination, and asserted that he was regarded as disabled after he experienced extreme pain in his shoulder while working. *Mesa*, 2018 2018 WL 3946549, at *1-3. Because of the injury, his employer, CPS, asked him to undergo additional medical testing, as well as fitness for duty examination, to ensure that he was safe to return to work. *Id.* at 6-7. When Mesa did not show for the test, CPS placed him on unpaid leave pending retirement. *Id.* at 7-8. Mesa sued, claiming he was placed on leave and forced to retire because he was regarded as disabled, and CPS moved for summary judgment. *Id.* at 10-11.

After a thorough analysis, the Court denied CPS's motion on Mesa's "regarded as" disability discrimination claim. *Id.* at 25. In doing so, the Court rejected CPS's argument that because Mesa's shoulder injury fully recovered within a matter of days, he was not "regarded as" disabled. *Id.* at 13. The Court reasoned that CPS was required to show that Mesa's perceived impairment was both objectively transitory and minor. *Id.* at 14-15. "In other words, when the

6

'regarded as' disabled claim is based on an alleged perceived impairment, the transitory and minor

inquiry is not about Plaintiff's actual impairment, but the impairment perceived by his employer."

*Id.* at 14 (internal quotations omitted).

In support of this rationale, the Court pointed to the EEOC's Interpretive Guidance in 29

C.F.R. pt. 1630 App. § 1630.2(l), which states:

> [A]n employer that terminated an employee with an objectively "transitory and
> minor" hand wound, mistakenly believing it to be symptomatic of HIV infection,
> will nevertheless have "regarded" the employee as an individual with a disability,
> since the covered entity took a prohibited employment action based on a perceived
> impairment (HIV infection) that is not "transitory and minor."

*Id.* Therefore, to prevail on summary judgment, CPS was required to prove that as a matter of law,

"the shoulder injury it perceived Mesa to have, viewed objectively, was transitory (lasting less

than six months) *and* minor. *Id.* at 16 (emphasis in original). Because CPS failed to satisfy this

burden, the Court denied its motion. *Id.* at 17-18.

In addition, the Court rejected CPS's argument that its concern that Mesa was a potential

safety hazard was "insufficient to infer that it regarded him as having an impairment." *Id.* at 14.

The Court again pointed to the EEOC's Interpretive Guidance, which states: "[A]n employer who

terminates an employee with angina from a manufacturing job that requires the employee to work

around machinery, believing that the employee will pose a safety risk to himself or others if he

were suddenly to lose consciousness, has regarded the individual as disabled." *Id.* at 15 (*quoting*

29 C.F.R. pt. 1630, App. § 1630.2(l) (2016)); *see also Equal Employment Opportunity Comm'n v.*

*Amsted Rail Co., Inc.*, 280 F. Supp. 3d 1141, 1150 (S.D. Ill. 2017) (holding that "it is enough under

the 'regarded as' prong to show that an employer took an action because it believed, rightly or

wrongly, that [the employee] would be a safety risk."). To the Mesa court, the EEOC's Interpretive

Guidance "**reflects the common-sense principle that if an employer takes adverse action**

7

**because it fears the consequences of the employee's medical condition, it has regarded the employee as disabled**." *Id.* (emphasis added).

Here, like the employer in *Mesa*, there is no dispute that the Union Pacific imposed work restrictions against Carrillo because it "feared the consequences" of his perceived medical condition. *Id.* In his fitness for duty determination, Dr. Holland wrote: "Based on UPRR's medical standards, a person with a single seizure of unknown cause is considered to have an unacceptable risk for sudden incapacitation (due to the risk for future seizures) for a minimum waiting period of five years after the event, requiring work restrictions for sudden incapacitation during this time." (Ps SOF ¶¶86-91.)

What is more, Union Pacific fails to present any credible evidence that Carrillo's perceived impairment was both transitory *and* minor. Quite the contrary: the evidence submitted by Union Pacific suggests that Carrillo's perceived impairment (unprovoked seizure) was so grave and dangerous, that it required broad work restrictions for a minimum of five years. (*Id.*) Indeed, Dr. Holland submitted documents to the medical insurer Aetna claiming Carrillo was "**permanently disabled**" through 12/31/9999. (Ps SOF ¶66, Ex. 25 at UPCARRILLO000629-30) (emphasis added). This evidence makes clear that Union Pacific regarded Carrillo as disabled.

### b.   Defendant's "reliance" on medical opinions is immaterial

Union Pacific argues that because it relied on a physician's findings when issuing Carrillo's fitness for duty determination, Carrillo cannot prove that he was "regarded as" disabled.[6] This

---

[6] Most of Union Pacific's cited case law on this issue is either outdated or irrelevant to the "regarded as" question: *Bennett v. Calabrian Chemicals Corp.*, 324 F. Supp. 2d 815, 833 (E.D. Tex. 2004) (pre-2008 amendment case relying on outdated case law.); *Washington v. Occidental Chem. Corp.*, 24 F.Supp.2d 713, 727 (S.D. Tex. 1998) (pre-2008 amendment case relying on outdated case law.); *Pisani v. Conrad Industries, Inc*., No. 6:17-cv-00393, 2018 WL 701531, at *2 (W.D. La. Feb. 1, 2018) (cited language deals with direct threat defense, not regarded as element.); *Trevillion v. Union Pac. R.R.*, No. CV 18-610, 2021 WL 1762112, at *5 (W.D. La. May 4, 2021)

argument is a classic non-sequitur. Furthermore, the record here demonstrates that Dr. Holland and Dr. Charbonneau improperly decided that Carrillo suffered a single unprovoked seizure *before* receiving Dr. Frankel's report. (Ps SOF ¶¶65-67, 86-89.) This fact alone negates Union Pacific's argument.

Undeterred by logic, Union Pacific persists, arguing that Carrillo cannot show he is regarded as disabled merely because he was asked to go through a fitness for duty evaluation. (Dkt. 45 at 10.) Carrillo, however, does not argue, and has never argued, that he is regarded as disabled merely because he had to go through a fitness for duty determination. *See* Section II, *supra*. As explained above, Carrillo was regarded as disabled because Dr. Holland and HMS assumed Carrillo had a physical impairment (seizure), and based on that faulty assumption, imposed broad work restrictions against Carrillo that resulted in the loss of his job. *Id.* The fitness for duty exam was merely the vehicle in which Union Pacific's discrimination rode. Thus, Defendant's caselaw on this issue is inapposite.

Finally, Defendant cites *Jackson v. Union Pac. R.R. Co.,* a district court decision from the Southern District of Iowa. No. 4:19-cv-00069-RGE-RAW, 2021 WL 1726895, at *11 (S.D. Iowa Mar. 29, 2021). Not only is *Jackson* a non-controlling case that contradicts Fifth Circuit precedent, but it is wrongly decided on multiple fronts. Namely, the *Jackson* court failed to conclude that the plaintiff presented direct evidence of discrimination even though it was undisputed that the plaintiff was given work restrictions because of his impairment. *Id.* at 3-5. Under the Fifth Circuit's precedent in *Rodriguez*, this precise circumstance constitutes direct evidence of discrimination.

---

(no analysis of regarded as element; the court grants summary judgment because the employee's two weeks of paid administrative leave was not an adverse action.)

*See Rodriquez*, 436 F.3d at 480; *see also Fulbright,* 2022 WL 975603, \*7. As such, the out-of-circuit district court decision in *Jackson* has no value in the Fifth Circuit and should be disregarded.

## III.    CARRILLO IS QUALIFIED

A "qualified individual" is one who, with or without reasonable accommodation, can perform the essential functions of his job. 42 U.S.C. § 12111(8). A duty is "essential" if it bears "more than a marginal relationship to the employee's job." *Nall,* 917 F.3d at 342. Whether a duty is essential within the meaning of the ADA, includes consideration of (but not limited) written job descriptions, and the consequences of not requiring the employee to perform the function. *See* 29 C.F.R. § 1630.2(n)(3). Notably, the determination of whether a disabled person is "qualified" for a job "should be based on the capabilities of the individual [] at the time of the employment decision, and should **not** be based on speculation that the employee may become unable in the future." 29 C.F.R. § Pt. 1630, App. (emphasis added.)[7]

Here, Carrillo was qualified to perform his Diesel Electrician position, and the evidence demonstrates that he did not pose a significant risk of substantial harm. As such, he is a qualified individual under the ADA.

### a.    Carrillo's managers agree that he could perform the essential functions of the Diesel Electrician position

As a Diesel Electrician, Carrillo was responsible for conducting inspections and repairs for diesel locomotive electrical systems. (Ps SOF ¶34.) Diesel Electricians do not work on other railcars. (*Id.*) Most of the locomotive electrical systems are located inside the cab, or in what is called the car body of the locomotive, which is directly behind the cab. (*Id.*, ¶35.) When

---

[7] Plaintiff maintains that his unlawful screening claim under 42 U.S.C. § 12112(b)(6) had no qualification requirement under 42 U.S.C. § 12111(8). However, because Defendant did not move for summary judgment on this claim, Plaintiff does not address this issue.

electricians are conducting repairs, the locomotive is always stationary, and safety measures are in place preventing any movement of the locomotive. (*Id.*, ¶¶37-39.) At times, Diesel Electricians can also be asked to move locomotives, use cranes or hoists, or travel to other locations to service a locomotive. (*Id.*, ¶¶41-46.) They always work or travel with a partner, however, and can divide the duties as necessary. (*Id.*)

For over four years, Carrillo performed all the necessary duties of the Diesel Electrician position without issue. (*Id.*, ¶¶47-48.) Carrillo's direct supervisors, Roddy Rodriguez and Brett Thomason, had no concerns with Carrillo's performance. (*Id.*) The sole criticism of Carrillo was an alleged attendance concern, but Carrillo's personnel file only shows one instance of non-attendance. (*Id.*, ¶48.) Thus, Carrillo was unquestionably qualified.

> **b.     Fact issues preclude summary on the direct threat defense**

Despite Carrillo's experience in the position, Defendant argues that he is unqualified to be a Diesel Electrician because he poses a direct threat to the safety of others. (Dkt. 45 at 12.) An employer is entitled to a direct threat defense if an employee poses a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." *E.I. Du Pont*, 480 F.3d at 731 (quoting 42 U.S.C. § 12111(3)); *see also* 42 U.S.C. § 12113(b). Whether an employer has properly determined that a person poses a direct threat depends on "the objective reasonableness of [the employer's] actions." *Nall,* 917 F.3d at 342; *Bragdon v. Abbott*, 524 U.S. 624, 650 (1998) ("[C]ourts should assess the objective reasonableness of the views of health care professionals without deferring to their individual judgments[.]").

"The direct threat defense must be based on a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence, and upon an expressly individualized assessment of the individual's present ability to safely perform the

11

essential functions of the job, reached after considering, among other things, the imminence of the risk and the severity of the harm portended." *Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73, 86 (2002) (quoting 29 C.F.R. § 1630.2(r)); *see also E.I. Du Pont*, 480 F.3d at 731 ("The employer must make an individualized assessment of the individual's present ability to safely perform the essential function of the job"). The employer may not rely on "**a categorical conclusion that an employee with a particular disability cannot safely perform a job.**" *Nall*, 917 F.3d at 344 (emphasis added).

While the Fifth Circuit has not determined which party bears the burden of proof regarding a direct threat defense, *see id.,* at 343 n.5, assigning the burden to the employer is not plain error and is consistent with long-standing precedent on affirmative defenses.[8] *See Rizzo v Children's World Learning Centers Inc*, 213 F 3d. 209 (5th Cir. 2000); *see generally, Coning Glass Works v Brennan*, 417 US 188, 196 (1974) (employer has the burden of proof on an affirmative defense)

Regardless of which party holds the burden, however, fact issues exist in this case that preclude summary judgment.

### i.     There is no significant risk of substantial harm

The direct threat defense requires proof of both (1) a significant risk of substantial harm, and (2) that this risk cannot be eliminated by reasonable accommodation. *E.I. Du Pont*, 480 F.3d at 731. As to the risk of harm, the record demonstrates that Carrillo worked on stationary locomotives that were either inside of a diesel shop or stopped on a separate service track. (Ps SOF

---

[8] The EEOC's Interpretive guidance places the burden clearly on the employer. *See* Interpretive Guidance to 29 C.F.R. pt. 1630, App., § 1630.15(b) & (c) ("With regard to safety requirements that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities, an *employer must demonstrate that the requirement,* as applied to the individual, *satisfies the 'direct threat' standard* in section 1630.2(r) in order to show that the requirement is job related and consistent with business necessity") (emphasis added).

¶¶34-40.) There were multiple safety measures in place that prevented the locomotive from moving or entering a live track. (*Id.*) Most of the electrical equipment Carrillo serviced was located within the cab of the locomotive, and Diesel Electricians entered the cab by way of ordinary steps. (Ps SOF ¶35.) Therefore, even if Carrillo had a risk of seizures, which he doesn't, the worst-case scenario in performance of his most common duty is that he would take an ordinary fall to the ground within the cab of the locomotive. (*See* Ps SOF ¶¶34-40.) Certainly, that does not qualify as a risk of *substantial* harm.

Defendant argues that Carrillo, at times, may have been required to move or climb on a locomotive, use cranes or hoists, or travel to separate locations to perform service. But Defendant fails to even mention the safety measures in place that eliminate any risk of substantial harm. Namely, Diesel Electricians work in pairs, and so if they are moving a locomotive or using a crane or hoist, one person is using the machine while the other person is the guide. (Ps SOF ¶¶ 41-45.) There are no rules governing which employees performs which role. (*Id.*) Thus, Carrillo could have easily performed the guide role without issue. (*Id.*)

Moreover, when Diesel Electricians move a locomotive, they may only go five miles per hour. (*Id.*, ¶42.) They are also only certified to move the locomotive within the service facility, which is separate from the main line and other sections of the yard. (*Id.*, ¶¶30-32, 42.) If, in the unlikely event that a Diesel Electrician became unconscious while actually moving the locomotive, there are D-rails and an "alerter" button that prevent the locomotive from crashing into other equipment or entering a main line track. (*Id.*, ¶42.)  Certainly, these measures significantly reduce any level of harm that could occur if incapacitation were to occur. (*Id.*, ¶¶ 41-44.)

For climbing on equipment, Diesel Electricians in El Paso are required to use fall protection any time they are working at heights above four feet. (*Id.*, ¶36.) The fall protection prevents injury

13

should they slip and fall, or experience sudden incapacitation. (*Id*.) Indeed, Union Pacific's work restriction specifically stated that Carrillo could not work at *unprotected* heights over 4-feet. (*Id.*, ¶¶90, 93.) Because Carrillo was required to where such fall protection, this restriction is immaterial, and any potential harm is nonexistent.

Finally, Defendant claims Carrillo would have to travel to a separate location to conduct repairs using a company vehicle. To be clear, these vehicles were regular trucks, not commercial vehicles. (*Id.*, ¶46.) When traveling to a separate location, the electricians always traveled in pairs. (*Id.*) There was and is no requirement as to who drives the vehicle. (*See id*, ¶¶41,46.) Thus, if there is any reasonable safety concern at all, which there is not, Carrillo could have simply sat in the passenger seat. But Union Pacific refused to even consider the specifics of Carrillo's job, choosing instead to rely on unfounded myths, stereotypes, and prejudices.

As a result, on this record, fact issues exist preventing summary judgment on Defendant's direct threat defense.

> ii. ***Defendant's decision is not based an individual assessment of Carrillo's <u>present</u> ability to perform his job***

Union Pacific claims it engaged in an individualized assessment of Carrillo's ability to do his job. The record demonstrates the opposite, that Union Pacific relied on an automated process based on assumptions and stereotypes, exactly what the ADA prohibits.

The totality of the "individual assessment" conducted by Dr. Charbonneau and Dr. Holland, the two doctors responsible issuing Carrillo work restrictions, was to conduct a superficial review of his medical records. (Ps SOF ¶¶65-67, 86-91.)  Dr. Holland and Dr. Charbonneau never talked with Carrillo's treating neurologist; they never spoke with or examined Carrillo or spoke with his wife, the sole witness to Carrillo's single instance of fainting or syncope; they never even spoke with Carrillo's managers to determine what his precise responsibilities were in El Paso. (*Id*.)

Then, having presumed Carrillo suffered a seizure, Dr. Holland sent Carrillo's file to Dr. Frankel at UNMC, who did exactly what Union Pacific asked for when Dr. Holland signed up UNMC—he rubber stamped the decision. (Ps SOF ¶¶69-85.) Dr. Frankel reviewed the medical records and never spoke with Carrillo or his wife, supervisors, or treating doctors. (*Id.*) Based on this record review alone, Dr. Frankel signed off on Dr. Holland's decision, even though much of what he was asked was well outside of his area of expertise. (*Id.*)

Dr. Holland then issued Carrillo Union Pacific's form permanent sudden incapacitation restrictions. (*Id.*, ¶¶86-96, 105-113.) These restrictions bear little connection to Carrillo's actual duties and responsibilities, but clearly prevent any kind of reasonable accommodation. (*Id.*) Dr. Holland issued the restrictions on June 14, 2018, nearly a full year *after* Carrillo suffered his event. (*Id.*, ¶¶49, 86.) However, there is no evidence that Dr. Holland even considered this fact when issuing his restrictions. (*See id.*, ¶¶86-91.)

What is more, these standard restrictions are the very type of broad, "categorial conclusion that an employee with a particular disability cannot safety perform a job" that the ADA prohibits. *See Nall*, 917 F.3d at 344. The restrictions prevented Carrillo from "working on or near moving trains," working in position that required "critical decision making," or operating any company vehicle, regardless of size. (*See* Ps SOF ¶93.) There are approximately 32,000 employees at Union Pacific. (*Id.*, 105.) Out of those jobs, Carrillo's managers, Daniel Glenn and Andreas Madar, could not identify a single job that Carrillo could perform with Dr. Holland's restrictions outside of possibly an administrative time keeping position. (*Id.*, ¶¶106-111.)

Under any interpretation of the evidence, Union Pacific cannot prove that it engaged in an individualized based on Carrillo's present ability to perform his job. As such, Union Pacific's motion should be denied.

iii.      *Defendant's decision is not objectively reasonable relying on the best available medical evidence*

The record also demonstrates that Union Pacific's FFD determination was not based on objectively reasonable medical judgment using the best available medical evidence. *Chevron,* 536 U.S. at 86. It is undisputed that neither Dr. Holland nor Dr. Charbonneau are neurologists. (*See* Ps SOF ¶¶67, 91.) And yet, they unilaterally decided that Carrillo suffered an unprovoked seizure, even though none of Carrillo's treating doctors were able to reach such a conclusion. (*See id.*, ¶¶65-67, 86-91.) What is more, the objective medical evidence undercuts their conclusion, as none of the objective testing indicated Carrillo suffered a seizure. (*Id.*, ¶64.)

Defendant next attempts to hide behind its reliance on the FMCSA medical guidance, but that too is riddled with problems. Most striking, the FMCSA itself no longer relied on the Medical Examiner Handbook ("MEH") after 2015. (*Id.*, ¶¶25-26.) The MEH also never underwent any type of peer-review analysis, and other doctors expressed concern about applying it to railroad workers. (*Id.*, ¶¶14-15.) Dr. Holland knew these facts but nonetheless continued to selectively apply sections of the MEH as he saw fit. (*Id.*, ¶¶18, 86-91.)

The MEH also provides guidance for certified medical examiners who perform commercial driving medical examinations. (*Id.*, ¶¶10-13.) The MEH has no relation to railroad workers and does not apply to the railroad industry as a matter of law. (*Id.*, ¶¶10-13.) It contains no information validating broad work restrictions for railroad workers. (*Id.*) It also mandates in person examinations by an independent medical examiner, a provision Union Pacific and Dr. Holland refused to follow. (*Id.*) And Dr. Holland is not and has never been a certified examiner. (*Id.*, ¶11.) Viewing this evidence in Carrillo's favor, as is required in this motion, any reasonable juror could find that Dr. Holland's decision was not objectively reasonable or based on the best available medical evidence.

16

To try to backfill for these gaping holes, Union Pacific argues that Dr. Holland and Dr. Charbonneau "relied" on the opinions Dr. Frankel, and thus their conclusions are reasonable. However, Dr. Charbonneau and Dr. Holland both concluded that Carrillo had a seizure before ever receiving an opinion from Dr. Frankel. (*Id.*, ¶¶65-67, 86-89.) Once formed, their decision was intractable. The preordained opinion from Dr. Frankel confirming their own changed nothing.

In addition, Union Pacific's reliance on Dr. Frankel's opinion was not objectively reasonable. *See Nall*, 917 F.3d at 342; *Bragdon,* 524 U.S. at 650. Dr. Frankel and UNMC are paid consultants who rubber-stamp Dr. Holland's FFD determinations. (Ps SOF ¶¶69-85.) Dr. Frankel and his department of neurologists have never once disagreed with Dr. Holland's medical determination, his reliance on the FMCSA guidance, or his imposition of broad work restrictions. (*Id.*, ¶¶69-85, 117-132.) Moreover, Dr. Frankel (and Dr. Diesing) have no experience with the railroad, have never spoken with Carrillo or his supervisors, and have no exposure to the FMCSA medical guidance outside of being spoon-fed the handbook by Dr. Holland. (*Id.*) Certainly, this evidence creates factual issues for a jury to consider.

And finally, Defendant contends that "[e]ven Carrillo's expert neurologist, Dr. Devereaux, testified Union Pacific's FFD determination was reasonable based upon the information available to it at the time." (Dkt. 45 at 14, Def. Ex. AAA, Devereaux Dep. at 47:16-48:14.) Dr. Devereaux said nothing of the sort. (*Id.* at 47:16-48:14.) Dr. Devereaux testified that any reasonable neurologist would have talked directly to the only person who was present and conscious when Carrillo fainted: his wife, Tara. (*Id.* 23:15-24:22.) Dr. Holland never did that, and neither did Dr. Frankel or Dr. Diesing. (*See* Ps SOF ¶¶65-86, 91.) Dr. Devereaux in no way testified that Union Pacific's FFD determination was reasonable. (*See* Def. Ex. AAA, *generally.*) Indeed, just the

opposite—Dr. Devereaux testified that based on Mrs. Carrillo's recount, Carrillo fainted due to illness, and thus needed no restrictions at all. (Def. Ex. AAA, Devereaux Dep. at 35:18-36:23.)

For these reasons, regardless of who holds the burden on direct threat, fact issues preclude summary judgment and Defendant's motion should be denied.

## IV.    FRONT PAY

On April 7, 2022, after discovery closed, and two weeks before it moved for summary judgment, Union Pacific sent a letter to Carrillo offering to reevaluate his medical status. (Ps SOF ¶133.) Union Pacific argues that the mere sending of the letter negates Carrillo's claim for front pay. (Dkt. 45 at 18-19.) This argument fails for several reasons. *First*, Union Pacific's motion is premature. Union Pacific's work restrictions for Carrillo do not end until June 2022. (Ps SOF ¶91, 133.) Therefore, Carrillo cannot turn down an "unconditional offer" of reinstatement as one currently does not exist. *Second*, Union Pacific's offer is not unconditional, and it is not an offer of employment. (*Id.*, ¶133) Union Pacific's letter says nothing of an offer of employment, nothing of what job is being offered, and nothing of when Carrillo is due to start. (*Id.*) Therefore, unlike the cases cited by Union Pacific, where there were unconditional offers of employment with certain positions and start dates, Union Pacific's offer here does not even qualify as an offer of employment. *See, e.g.*, *Clark v. Frank*, 920 F.2d 1146, 1151 (2d Cir. 1992).

*Third*, if Carrillo chooses not to submit to Union Pacific's fitness for duty process, his decision would be eminently reasonable. In the Fifth Circuit, a reasonable refusal of an unconditional offer of reinstatement is a "special circumstance" that enables the employee to maintain a claim for front pay. *See Mahoney v. Ernst & Young LLP,* 487 F. Supp. 2d 780, 785 (S.D. Tex. 2006); *Houser v. Castle Montessori Sch., Inc.*, No. 4:18-CV-00241, 2019 WL 2945904, at *3 (E.D. Tex. May 2, 2019), *report and recommendation adopted,* No. 418CV00241ALMKPJ,

2019 WL 2295443 (E.D. Tex. May 30, 2019). Here, Union Pacific removed Carrillo from service in 2017, nearly five years ago. (Ps SOF ¶¶54-57.) After he was not allowed to return to his job, Carrillo was forced to move out of his house in Las Cruces, New Mexico and move his wife and young children to a different city to gain adequate employment and have a stable place to live. (*Id.*, ¶135.) Under these circumstances, Union Pacific cannot establish as a matter of law that Carrillo's potential future decision to turn down an offer to be medically reevaluated would be unreasonable. *See Houser*, 2019 WL 2945904, at \*3.

**V.      PUNITIVE DAMAGES**

Finally, based on one factual paragraph, Union Pacific asks this Court to dismiss Carrillo's claim for punitive damages. To satisfy the standard for punitive damages, the employee need only show that the employer engaged in discrimination in the face of a perceived risk that its actions would violate federal law. *See* 42 U.S.C. § 12117(a). As with any discrimination case, meeting this threshold does not require evidence of egregious misconduct. *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 534–535 (1999); *see also E.E.O.C. v. Western Distributing Company*, 322 F.Supp.3d 1100, 1105 (D. Colo. 2018).

Where punitive damages are sought for conduct of lower-level employees, special considerations governing vicarious liability may apply. Because the employer may not anticipate the discriminatory act, and may even prohibit it, the employer can only be liable for punitive damages in certain limited circumstances. *See Kolstad*, 527 U.S. at 536–37. But when high-level employees are involved, these considerations do not apply. *See Wooten v. BNSF Railway Company*, 819 Fed. Appx. 483, 486 (9th Cir. 2020). For high-level employees, like Dr. Holland, the jury merely evaluates whether the actions of the agent in question were within the scope of the

19

agent's employment; in other words, was this the kind of thing that he or she did and does on a regular basis. *Kolstad*, 527 U.S. at 542.

In this case, Dr. Holland, Defendant's Chief Medical Officer, is the one who acted with reckless indifference towards Carrillo, disregarding evidence that Carrillo had no impairment at all, and bypassing innumerable accommodations that were easily available even if Carrillo did have an impairment. Dr. Holland also refused to acknowledge that the medical guidance he used had no relation to the railroad industry and was no longer even valid in the industry where it did apply. Instead, Dr. Holland relied on the purchased opinion of outside doctors, who never disagreed with his analysis or conclusion, and who regularly and predictably provided supporting opinions well beyond their areas of practice or expertise.

Since 2014, Union Pacific, at Dr. Holland's direction, removed over 7,000 employees from service based on the same automated process relying on stereotypes and prejudice, making punitive damages both appropriate and necessary. Indeed, multiple juries have agreed. *Campbell v. Union Pac. R.R. Co.*, No. 4:18-CV-00522-BLW, 2020 WL 5300734, at *9 (D. Idaho Sept. 4, 2020 (denying summary judgment resulting in plaintiff verdict and $1,000,000 in punitive damages); *Mlsna v. Union Pac. R.R. Co.*, 3:18-cv-00037-wmc (W.D. Wis. July 2, 2021) (jury verdict rejecting Union Pacific's direct threat defense and awarding damages in the amount of $43,970,000.00). Thus, as with the rest of its motions, Defendant's motion with respect to punitive damages should be denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment should be denied in its entirety.

Date: May 6, 2022

**NICHOLS KASTER PLLP**

s/Lucas J. Kaster
Michele R. Fisher* (MN #303069)
          fisher@nka.com
James H. Kaster** (MN #53946)
          kaster@nka.com
Lucas J. Kaster** (MN #396251)
          lkaster@nka.com
Neil D. Pederson** (MN #0397628)
          npederson@nka.com
80 South Eighth Street
4700 IDS Center
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 338-4878

**ATTORNEYS FOR PLAINTIFF**

*admitted generally to W.D. Tex
** admitted pro hac vice

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 6, 2022 I filed the foregoing document electronically

through the CM/ECF system, which served all counsel of record using its ECF notification system.


s/Lucas J. Kaster
Lucas J. Kaster